**Eugene Herman HALDER, d/b/a Northcrest Standard Service Station, Plaintiff-Appellant,**

v.

**STANDARD OIL COMPANY, a Kentucky corporation; Chevron, U.S.A., Inc., a California corporation, and Thomas D. Moreland, individually and as Commissioner for the Department of Transportation for the State of Georgia, Defendants-Appellees.**

**No. 79–3997.**

United States Court of Appeals, Fifth Circuit. Unit B

April 6, 1981.

---

David R. Wininger, Ormond Beach, Fla., for plaintiff-appellant.

Herbert P. Schlanger, Jule W. Felton, Jr., Atlanta, Ga., for Standard Oil Co. & Chevron U.S.A., Inc.

William C. Joy, Charles M. Richards, Asst. Attys. Gen., Atlanta Ga., for Dept. of Transp.

Before GODBOLD, Chief Judge, and HATCHETT, Circuit Judge, and MARKEY *, Chief Judge.

MARKEY, Chief Judge:

Eugene Herman Halder (Halder), d/b/a Northcrest Standard Service Station, appeals from an order of the District Court for the Northern District of Georgia dismissing his complaint against Standard Oil Company (Standard), Chevron, U. S. A., Inc. (Chevron), and Thomas D. Moreland, individually and as Commissioner for the Georgia Department of Transportation. We affirm.

### Background

On June 18, 1973, Halder entered into a Dealer Lease and Supply Contract with

* Of the U. S. Court of Customs and Patent Appeals, sitting by designation.

Standard, predecessor of Chevron, for the period July 1, 1973—June 30, 1978, relating to Halder's operation of a service station at 3672 Northcrest Road, Doraville, Georgia, also known as parcel 45. Sometime before March 31, 1978, Georgia notified Chevron that it planned to acquire parcel 45 under its power of eminent domain. On March 31, 1978 Chevron notified Halder that the lease would be terminated on its stated expiration date, but that Halder would be allowed to continue on a month-to-month basis. On its expiration date, June 30, 1978, the lease terminated and Halder continued on the month-to-month basis.

However, fearing he would receive no compensation for loss of business opportunity if Georgia proceeded with its plan,[1] Halder asked Chevron on February 20, 1979, "to enter into a renewal lease agreement until such time as the State of Georgia takes my station in order that I may be able to share in the condemnation proceeds." Chevron did not respond.

On April 3, 1979, Halder brought suit under the Petroleum Marketing Practices Act of 1978, 15 U.S.C. § 2801 et seq. (Act), asserting that: (1) Standard, Chevron, and Halder are engaged in a "franchise relationship"; (2) Standard and Chevron are "franchisors"; and (3) Halder is a "franchisee" within the meaning of the Act.

Referring to Georgia's plan to take parcel 45 under power of eminent domain, the complaint states that "[Georgia] will be in a position to pay over monies to [Standard and Chevron] which includes monies for the goodwill of the leased marketing premises." The complaint, in relevant part, further states that:

13.

The Defendant franchisors may not terminate the franchisee's relationship except as set forth in the [Act].

14.

The franchisors have not complied with the [Act] in that the premises herein is a leased marketing premises as defined in the said [A]ct and the Defendant franchisors terminated the Plaintiff's franchise without making an offer to fairly apportion between the franchisor and the franchisee any compensation the Defendant franchisors receive from the State of Georgia under the Doctrine of Eminent Domain . . .

Asserting that he "will lose his livelihood without just compensation," Halder asks, inter alia, that: (1) a preliminary injunction issue prohibiting Georgia from paying over any monies to franchisors until a resolution of the matter is adjudicated on the merits; (2) Halder be awarded judgment in an amount found to be his fair share of compensation received from Georgia for the taking of parcel 45; and (3) if and when Georgia institutes a condemnation suit, Halder be named as a party or be given notice of any and all action between Georgia, Standard, and Chevron.

On October 24, 1979, the district court concluded that Chevron had not violated the Act, because it had not failed to renew the franchise relationship, and dismissed the action as premature. Noting that the complaint itself recognizes the existence of an ongoing franchise relationship, the court stated that a request for relief must await nonrenewal of that relationship. The court distinguished the particular lease, which terminated on June 30, 1978, from the franchise relationship which was continued.

### The Act

The purpose of the Act is to increase the bargaining strength of individual franchisees in the petroleum industry by regulating and limiting those circumstances under which a franchisor can terminate a

1. By affidavit attached to his complaint, Halder asserted that "Mr. W. T. Wilson, my marketing representative, informed me that I would not be entitled to a fair apportionment of any compensation received by Chevron U. S. A., Inc., the Franchisor, for any loss of business opportunity or goodwill contrary to the Petroleum Marketing Practices Act, 15 U.S.C. 2802(d)(1)". Mere predictions of what may or may not occur cannot, however, confer jurisdiction on a court to render an advisory opinion relating to those predictions.

"franchise" or fail to renew a "franchise relationship." Relevant provisions define the terms "franchise", "franchise relationship", and "fail to renew", 15 U.S.C. § 2801(1)(A), (1)(B), (2), and (14).

In the absence of certain circumstances specified elsewhere in the Act, a franchisor may not:

(1) terminate any franchise (entered into or renewed on or after the date of enactment of this Act [June 19, 1978]) prior to the conclusion of the term, or the expiration date, stated in the franchise; or

(2) fail to renew any franchise relationship (without regard to the date on which the relevant franchise was entered into or renewed). [15 U.S.C. § 2802(a)] [2]

Among the certain circumstances creating exceptions to § 2802(a) is "[t]he occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable", 15 U.S.C. § 2802(b)(2)(C), including "condemnation or other taking, in whole or in part, of the marketing premises pursuant to the power of eminent domain", 15 U.S.C. § 2802(c)(5). In the event of nonrenewal of a franchise relationship based upon condemnation under power of eminent domain, "the franchisor shall fairly apportion between the franchisor and the franchisee compensation, if any, received by the franchisor based upon any loss of business opportunity or good will", 15 U.S.C. § 2802(d)(1).

If a franchisor fails to comply with the requirements of 15 U.S.C. § 2802, the franchisee may maintain a civil action against the franchisor in an appropriate district court. 15 U.S.C. § 2805(a).

### Issue

The issue on appeal is whether the complaint is premature.

### OPINION

■ It is fundamental that the federal courts do not decide abstract, hypothetical, or contingent questions, *Alabama State Federation of Labor v. McAdory*, 325 U.S. 450, 461, 65 S.Ct. 1384, 1389, 89 L.Ed. 1725 (1945), which is but another way of stating the requirement for a justiciable case or controversy under Art III, § 2 of the Constitution. A justiciable controversy is distinguished from a dispute merely hypothetical or abstract in nature. It must be a real and substantial controversy admitting of specific relief through a decree of conclusive character, not an opinion advising what the law would be upon a hypothetical state of facts. *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 463–464, 81 L.Ed. 617 (1937).

This circuit has held that the district courts lack jurisdiction to express legal opinions based upon hypothetical or academic facts. *Tilley Lamp Co. v. Thacker*, 454 F.2d 805, 808 (5th Cir. 1972); *American Fidelity & Casualty Co. v. Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Co.*, 280 F.2d 453, 461 (5th Cir. 1960).

■ Halder's complaint posits a hypothetical set of facts which might form a basis for relief. *If* Georgia takes parcel 45 under power of eminent domain, and *if* compensation received by Chevron includes compensation based upon loss of business opportunity or good will, and *if* Chevron does not fairly apportion that compensation between Chevron and Halder, *then* Halder would be entitled to file a civil action. However, "it is not the function of a United States District Court to sit in judgment on these nice and intriguing questions which today may readily be imagined, but may never in fact come to pass." *American Fidelity & Casualty Co. v. Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Co.*, 280 F.2d at 461.

---

**2.** The complaint intermixes the provisions of § 2802(a)(1) and § 2802(a)(2). There can be no cause of action, however, under either section. Because the relevant franchise was not terminated prior to conclusion of its term, § 2802(a)(1) is inapplicable. As set forth in the text, suit under § 2802(a)(2) is premature.

Halder's fear that he may not receive condemnation proceeds when and if condemnation occurs does not confer jurisdiction on the district court.[3]

As emphasized by the district court, the "franchise relationship" *was* renewed. The concept of a franchise relationship is important. It is defined and treated under the Act separately from the franchise or lease itself. The dichotomy in the Act between "franchise" and "franchise relationship" recognizes the right of a franchisor to impose new terms after expiration of an original lease, but limits that right by a requirement that the franchisor must renew the "relationship", viz., "the respective motor fuel marketing or distribution obligations and responsibilities of a franchisor and a franchisee which result from the marketing of motor fuel under a franchise". 15 U.S.C. § 2801(2).

█ Under the Act, Chevron was at liberty not to renew the particular existing lease with Halder after its termination date. It was, however, required to continue its "relationship" with Halder albeit under different terms, unless a specific exception in the Act applied. *Frisard v. Texaco, Inc.,* 460 F.Supp. 1094, 1098 (E.D.La.1978).[4] No

such exception, under which Chevron might have refused to renew the franchise relationship, occurred. The exception here involved, condemnation, if it had occurred, would have entitled Chevron to discontinue the relationship, on the condition that it share with Halder any condemnation proceeds received for loss of business opportunity or good will.

Responding to Georgia's notice of its plan to condemn, Chevron did not renew Halder's *term* lease after its expiration. That action is not challenged here, except insofar as the termination was not accompanied by an offer to compensate Halder if condemnation occurred and its proceeds included an amount for loss of business opportunity and good will. The Act, however, contains no requirement for such prospective promises. Chevron and Halder did continue their relationship under the provisions of the existing lease, on a month-to-month basis. Continuation of a relationship is all that the Act requires, and Halder's complaint expressly recognized that Chevron did continue the "franchise relationship".[5] Stated in terms of the Act, continuation of the relationship on a month-to-month basis continued "the respective motor fuel marketing or distribution obligations and responsibilities" of

3. Whether Halder might appear in a Georgia condemnation suit, to argue that condemnation caused him business loss, is a question not before us and we express no opinion on it.

4. As stated in S.Rep.No.95–731, 95th Cong., 2d Sess. 30, reprinted in [1978] U.S.Code Cong. & Ad.News 873, 888,

In connection with the non-renewal provisions of the title, the term "franchise relationship" is utilized. The term is defined to cover the broad relationship which exists between a franchisor and a franchisee by reason of the franchise agreement. The term is utilized for two reasons. First, in the renewal context, the contract which constitutes the franchise may no longer exist and the term "franchise relationship" is utilized to avoid any contention that because the "franchise" does not exist there is nothing to renew. The renewal provisions of the title address the renewal of the relationship between the parties rather than the specific rights or obligations of the parties under the franchise agreement. Second, because the title contemplates changes in the specific provisions of the franchise agreement at the time of renew-

al, the title requires renewal of the relationship between the parties as distinguished from a continuation or extension of the specific provisions of the franchise agreement. Use of the narrower term "franchise" in this context could raise unintended questions regarding the ability of the franchisor to comply with the renewal obligations of the title by offering a franchise agreement which differs in any particular from the expiring franchise.

5. Paragraph 10 of the complaint reads:

Eugene Herman Halder, d/b/a Northcrest Standard Service Station, and the Defendants, Standard Oil Company, A Kentucky Corporation, and Chevron U. S. A., Inc., A California Corporation, are engaged in a franchise relationship as defined in the Petroleum Marketing Practices Act, 15 U.S.C. 2801, § 101(2) in that Congress has defined a franchise relationship as meaning the respective motor fuel marketing or distribution obligations and responsibilities of a franchisor and a franchisee which result from the marketing of motor fuel under a franchise.

Chevron and Halder "which result from the marketing of motor fuel under a franchise".[6]

#### Conclusion

Condemnation had not occurred, and Chevron had renewed the franchise relationship, at the time suit was filed. Accordingly, Halder's complaint is premature and the district court's order dismissing the complaint is affirmed.

*AFFIRMED*

GODBOLD, Chief Judge, specially concurring.

I wish to emphasize that we are only deciding that the complaint is premature and that we lack jurisdiction. We do not decide what the legal and financial consequences will be if and when condemnation occurs.

Possibly in a condemnation proceeding the former lessee whose station has been converted to that of a franchise relationship would be compensated on the basis of his only losing a month-to-month term. I am not convinced that the statute permits a franchisor having notice of condemnation to terminate a lease and shift to a month-to-month relationship, and then in the condemnation proceeding receive the entire economic benefit of the condemnation less only the value of a one month term to the franchisee. We do not reach this question and it is for another court at another time.

**6.** *See Munno v. Amoco Oil Co.,* 488 F.Supp. 1114, 1116 n. 1 (D.Conn.1980).