PRO SALES, INC., Plaintiff-Appellant,

v.

TEXACO, U.S.A., a DIVISION OF TEXACO, INC., a Delaware corporation, Defendant-Appellee.

No. 85–3626.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 4, 1986.

Decided June 25, 1986.

---

Ridgway K. Foley, Jr., J.P. Graff, Schwabe, Williamson, Wyatt, Moore & Roberts, Portland, Or., for plaintiff-appellant.

Eric J. Nieman, Arden E. Shenker, Tooze, Kerr, Marshall & Shenker, Portland, Or., for defendant-appellee.

Before FLETCHER, ALARCON and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

Plaintiff Pro Sales, Inc. (Pro Sales) appeals the district court's dismissal for lack of subject matter jurisdiction of its action against Texaco, USA (Texaco) under the Petroleum Marketing Practices Act (PMPA or the Act). We have jurisdiction under 28 U.S.C. § 1291 (1982), and we reverse and remand.

FACTS AND PROCEDURAL HISTORY

Texaco is a major refiner of petroleum products and sells its products in part through wholesale distributors. At the time this suit was filed, Pro Sales was a wholesale distributor of Texaco products in Oregon. The relationship between Pro Sales and Texaco was governed by a three-

year agreement running from May 1, 1981 to April 30, 1984. The agreement required Pro Sales to buy and Texaco to sell a maximum of 8,800,000 gallons of gasoline and a minimum of 80% of that amount annually during the term of the agreement.

In February, 1983, Texaco reduced Pro Sales' credit rating from $700,000 to $350,000, and again in November to $200,000. This resulted in Pro Sales not being able to buy the amount of gasoline it normally would have bought for the first seven months of the 1983–84 contract year, which was the period used by Texaco to determine its dealers' volume allocations for its 1984–87 franchise agreements. Pro Sales eventually supplied Texaco with the security Texaco required to upgrade Pro Sales' credit to its original standing. Texaco had not required such security before, and there is no dispute that Pro Sales' credit with Texaco was excellent.

In January, 1984, Texaco sent Pro Sales a proposed 1984–87 franchise agreement, which included a reduced volume of gasoline that Pro Sales would be allowed to buy. On January 26, 1984, Texaco sent Pro Sales a ninety-day notice of nonrenewal as required by 15 U.S.C. § 2804 (1982).

On April 30, 1984, the day the 1981 franchise expired, Pro Sales signed the new franchise agreement "under protest" and at the same time filed this action. Pro Sales also moved for and on May 2 was granted a temporary restraining order continuing the terms of the 1981 agreement pending determination of the merits of the action. These terms continued in effect by stipulation of the parties throughout the district court proceedings and by order of the court pending resolution of this appeal.

On May 18, 1984, Texaco offered Pro Sales a new agreement, which provided for more gasoline than the April 30, 1984 pro-

tested agreement but less than the 1981 agreement. Texaco claims that it discovered an error in its calculation of the volumes in the April 30 agreement and corrected it; Pro Sales claims that the new offer was intended to minimize the impact of Texaco's soon-to-be-discovered use of a formula to calculate Pro Sales' allocation that differed from the formula used to calculate allocations for other distributors. Pro Sales signed the revised May 18 agreement, again "under protest."

At trial, Pro Sales contended that the franchise relationship had not been renewed, notwithstanding the signing of the new agreements under protest, and that Texaco had discriminated against it and had not acted in good faith in reducing Pro Sales' fuel allocations. Texaco denied nonrenewal, discrimination, and bad faith.

■ Instead of deciding the case on the merits, the district court acted on a suggestion in Texaco's posttrial brief and dismissed for lack of subject matter jurisdiction. Relying on *Hodge v. Arnett*, Civ.No. 81–893–RE (D.Or. June 4, 1982) (unpublished), the district court held that Pro Sales had not met the jurisdictional prerequisite of "nonrenewal" of the franchise relationship and dismissed its action. Pro Sales timely appealed.[1]

## STANDARD OF REVIEW

■ We review dismissal for lack of subject matter jurisdiction *de novo*. *See Redding Ford v. California State Board of Equalization*, 722 F.2d 496, 497 (9th Cir.1983), *cert. denied*, — U.S. —, 105 S.Ct. 84, 83 L.Ed.2d 31 (1984). Whether a given set of facts constitutes "nonrenewal" under the terms of the PMPA presents a question of law, also reviewable *de novo*. *See United States v. McConney*, 728 F.2d

1. We note that the district court purported to amend its opinion *after* Pro Sales had filed its notice of appeal from the order of dismissal. Because the filing of a notice of appeal generally divests the district court of jurisdiction over the matters appealed, *see, e.g., Donovan v. Mazzola*, 761 F.2d 1411, 1414 (9th Cir.1985), the district court here had no power to amend its opinion at the time it attempted to do so. We therefore address the district court's reasoning as set forth in its original opinion. This does not affect the substance of our decision, however, because the two opinions are virtually identical, differing only in their characterization of the procedural posture of the *Hodge* case.

1195, 1201 (9th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

## DISCUSSION

*Statutory Background*

Pro Sales brought this action based on section 105 of the Petroleum Marketing Practices Act, 15 U.S.C. § 2805 (1982), which provides in relevant part:

**(a) Maintenance of civil action by franchisee against franchisor; jurisdiction and venue; time for commencement of action**

If a franchisor fails to comply with the requirements of section 2802 or 2803 of this title, the franchisee may maintain a civil action against such franchisor. Such action may be brought, without regard to the amount in controversy, in the district court of the United States in any judicial district in which the principal place of business of such franchisor is located or in which such franchisee is doing business, except that no such action may be maintained unless commenced within 1 year after the later of—

(1) the date of termination of the franchise or nonrenewal of the franchise relationship; or

(2) the date the franchisor fails to comply with the requirements of section 2802 or 2803 of this title.

Pro Sales alleges that Texaco failed to renew the franchise relationship as required by section 2802 and failed to fall within section 2802(b)(3), the only provision that would arguably have allowed it not to renew. 15 U.S.C. § 2802 (1982), provides in relevant part:

**(a) General prohibition against termination or nonrenewal**

Except as provided in subsection (b) of this section ..., no franchisor engaged in the sale, consignment, or distribution of motor fuel in commerce may—

.     .     .     .     .

(2) fail to renew any franchise relationship

. . . .

**(b) Precondition and grounds for termination or nonrenewal**

(1) Any franchisor ... may fail to renew any franchise relationship, if—

.     .     .     .     .

(B) ... such nonrenewal is based upon a ground described in paragraph ... (3).

.     .     .     .     .

(3) For purposes of this subsection, the following are grounds for nonrenewal of a franchise relationship:

(A) The failure of the franchisor and the franchisee to agree to changes or additions to the provisions of the franchise, if—

(i) such changes or additions are the result of determinations made by the franchisor in good faith and in the normal course of business; and

(ii) such failure is not the result of the franchisor's insistence upon such changes or additions for the purpose of preventing the renewal of the franchise relationship.

The district court ruled that Pro Sales could not maintain an action under the PMPA because it had not proved "nonrenewal" of the franchise agreement. This lack of nonrenewal, the district court held, took the action out of the PMPA and deprived the district court of subject matter jurisdiction.

*Merits*

As a threshold matter, we must place the issue in its proper posture. The district court characterized its dismissal of Pro Sales' suit as a dismissal for lack of subject matter jurisdiction. Its basis for doing so, however, was its conclusion that the facts relied on by Pro Sales did not constitute "nonrenewal" under the terms of the PMPA.

■ Given that basis for its decision, the district court mischaracterized its dismissal. If the jurisdictional issue and the substantive issues of a cause of action are so intertwined that the question of jurisdiction is dependent on the resolution of the mer-

its, the court must address the case in terms of its merits. As the Supreme Court held in the seminal case of *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946):

> Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction.

■ We have applied this principle to the PMPA in *Sun Valley Gasoline, Inc. v. Ernst Enterprises, Inc.,* 711 F.2d 138, 140 (9th Cir.1983) ("The ability of [plaintiff] to allege a claim that comes within the definitional reach of the PMPA is a matter that goes to the merits of the action."), and it applies as well in the present case. In both cases, the determination that the facts of the case fell *outside* the PMPA definition would have defeated the merits of the plaintiff's action as well as subject matter jurisdiction.[2]

Under *Sun Valley,*[3] therefore, the district court was incorrect in dismissing for lack of subject matter jurisdiction. *See also Abadjian v. Gulf Oil Corp.,* 602 F.Supp. 874, 878–79 (C.D.Cal.1984). Because it based its dismissal on its conclusion that the facts asserted by Pro Sales did not constitute nonrenewal under the PMPA, the district court was in fact granting summary judgment; it determined that none of the issues of disputed fact were material to the issue of "nonrenewal" and that Texaco was entitled to judgment as a matter of law.[4]

We turn now to the merits of the district court's dismissal: whether Pro Sales' actions with regard to the successor contracts with Texaco constitute "renewal" under the PMPA.[5] We conclude that the district court erred in holding that they did.

2. Texaco's attempt to distinguish *Sun Valley* on the basis of the different definitions involved is unpersuasive. It offers no explanation of why the definition of "nonrenewal" in the present case should be any more independently jurisdictional than the definition of "franchise relationship" in *Sun Valley.*

3. In addition, all but one of the decisions reported at the time of the *Sun Valley* decision supported *Sun Valley's* conclusion "that the definitional reach of the PMPA is a question that goes to the merits" of a PMPA claim. *Sun Valley,* 711 F.2d at 140 & n. 2 (collecting cases). *But see Hodge, supra* (unreported, denying subject matter jurisdiction based directly on nonrenewal).

Cases since *Sun Valley* also support our conclusion here. *See, e.g., Meyer v. Amerada Hess Corp.,* 541 F.Supp. 321, 328–29 (D.N.J.1982); *see also Halder v. Standard Oil Co.,* 642 F.2d 107, 110–11 (5th Cir.1981) (finding that the parties circumstances constituted a "renewal" as a matter of law and concluding that issues raised were not currently justiciable.). One district court characterized its dismissal as one for lack of subject matter jurisdiction, but a careful reading of the opinion reveals no inconsistency with our characterization here. The court found as a matter of law that there had been no "nonrenewal" and concluded that there was no subject matter jurisdiction because there was no justiciable controversy, i.e., because the complaint failed to state a claim on which relief could be granted. *See Naso v. Sun Refining & Marketing Co.,* 582 F.Supp. 1566, 1567 (N.D. Ohio 1983).

4. Although this conclusion is not explicit in the district court opinion, the opinion clearly requires it. The court found no "nonrenewal" despite (1) its factual findings that Pro Sales had signed the successor contracts only "under protest" and filed suit the same day and (2) its recognition of Pro Sales' claim that Pro Sales had never operated under the new franchise agreement but only under the TRO. Under these circumstances, the district court must have considered these facts and assertions "immaterial" to the issue of nonrenewal.

5. The present case is distinguishable from *Sun Valley* in this respect. In *Sun Valley,* we remanded the case to the district court because that court had based its original legal conclusion (that no franchise relationship existed because of a lack of branding authority) on its improper determination of what at least may have been a genuine issue of act (whether the plaintiff had branding authority). *See* 711 F.2d at 139–41. In the present case, however, the case has been tried and the *factual* basis for the district court's dismissal is not in dispute. This allows us to address the *legal* conclusion without remanding for more factual findings on this issue.

■ The purpose of the PMPA is to protect "franchisees from arbitrary or discriminatory termination or non-renewal of their franchises." S.Rep. No. 95–731, 95th Cong., 2d Sess. 15, *reprinted in* 1978 U.S. Code Cong. & Admin.News 873, 874. The legislative history of the Act reflects a number of specific concerns. Among these are concerns that franchise independence may be undermined by the use of actual or threatened termination or nonrenewal to compel compliance with franchisor marketing policies; that gross disparity of bargaining power may result in franchise agreements that amount to contracts of adhesion; and that termination or nonrenewal may disrupt the reasonable expectations of the parties that the franchise relationship will be a continuing one. *Id.* at 17–19, 1978 U.S.Code Cong. & Admin.News at 875–77. To these ends, the PMPA regulates and limits those circumstances under which a franchisor may terminate a franchise or fail to renew a franchise. *See Halder v. Standard Oil Co.*, 642 F.2d 107, 109–10 (5th Cir.1981).

We conclude that this congressional plan would be frustrated by requiring a franchisee to go out of business before invoking the protections of the PMPA. Under the rule urged by Texaco and adopted by the district court, a franchisee would be forced to choose between accepting an unlawful and coercive contract in order to stay in business and rejecting it and going out of business in order to preserve a cause of action. Such a Catch-22 is inconsistent with congressional intent. *See Meyer v. Amerada Hess Corp.*, 541 F.Supp. 321, 329 (D.N.J.1982). Congress was concerned about *threats* of nonrenewal as well as nonrenewals themselves. *See* S.Rep. at 18, *reprinted in* 1978 U.S.Code Cong. & Admin.News at 876–77. The proposed rule gives no relief from threats, merely from actions. Indeed, such a rule might provide an incentive to the franchisor to insist on a contract that is illegal under the PMPA but with which the franchisee can stay in business, because the franchisee would have to go out of business and file suit to contest the legality of the terms, something few franchisees can afford to do.

In the present case, Pro Sales did everything it could short of completely sacrificing its established business to invoke its PMPA rights. We do not believe Congress intended to require it to take that final step in order to fall within the scope of the Act.

■ We therefore hold that a franchisee who signs a successor contract under protest and promptly seeks to invoke its rights under the PMPA,[6] as Pro Sales did here, has not "renewed" the franchise relationship so as to bar relief under the PMPA.[7]

---

6. Pro Sales urges that its continuation of the franchise relationship only under the terms of the TRO, and not under the terms of either successor contract, also bears on whether its actions constitute "nonrenewal." Although this factor supports Pro Sales' position in this case, we do not consider it nearly as important as the two factors described above. The signing of a contract under protest and the filing of a PMPA action are within the control of a franchisee, enabling the franchisee to protect its own rights. The ability of a franchisee to continue in business under the terms of a TRO instead of the terms of an allegedly illegal contract, however, is uniquely within the power of the district court to grant. Because the franchisee has no control over this factor, it cannot be required to preserve the franchisee's rights under the Act.

7. We note that this is also the result under Oregon contract law. The PMPA preempts inconsistent state law, but only "[t]o the extent that any [PMPA provision] applies to ... the nonrenewal ... of any franchise relationship." 15 U.S.C. § 2806(a); *see* S.Rep. at 16, 1978 U.S. Code Cong. & Admin.News at 874. Because no PMPA provision deals with *what* constitutes "nonrenewal" or what effect a reservation of rights has on "nonrenewal," state law will control. Or.Rev.Stat.Ann. § 71.2070 (1984) (the Oregon U.C.C.) provides:

> A party who with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as "without prejudice," "under protest" or the like are sufficient.

Pro Sales used the specifically approved phrase "under protest" in signing the successor contracts. In addition, it made clear its intent to act on that protest by filing suit the same day it signed the first contract. Under Oregon law, this is clearly sufficient to preserve its "nonrenewal" rights under the PMPA.

## CONCLUSION

Because the district court dismissed the action on the ground of a lack of "nonrenewal," it did not need to address the other issues raised in the case.[8] We hold that the district court erred as a matter of law in holding that Pro Sales had renewed the contract under the terms of the PMPA. As a result, those remaining issues must now be reached. Therefore, the district court's order dismissing plaintiff's action is VACATED and the case REMANDED for further proceedings consistent with this opinion.

8. For example, the district court did not address whether Texaco's actions were discriminatory or the terms offered in bad faith, nor did it address appropriate relief.