Byron J. FREEMAN, Plaintiff–Appellant.

v.

BP OIL, INC., GULF PRODUCTS DIVISION, Defendant–Appellee.

No. 87–3724

Non–Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

Sept. 21, 1988.

Karl J. Brandes, Steven L. Brannock, Tampa, Fla., for defendant-appellee.

Before VANCE, KRAVITCH and ANDERSON, Circuit Judges.

VANCE, Circuit Judge:

In this action under the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. §§ 2801–2841 (1982), Byron J. Freeman appeals from the district court's grant of summary judgment in favor of the defendant. We affirm.

## I.

On July 1, 1985 Freeman entered into a franchise agreement with defendant BP Oil, Inc., (BP). Under the agreement Freeman leased a service station owned by BP and received the right to sell petroleum products manufactured by BP's Gulf Products Division. The franchise agreement had a term of one year and expressly stated that it was a "trial franchise" under the PMPA.[1]

Relations between BP and Freeman soured, and on May 23, 1986 BP sent Freeman a notice of nonrenewal. The notice informed Freeman that the franchise would not be renewed and that his rights under the trial franchise would terminate effective August 31, 1986.

On August 29, 1986 Freeman brought this action. Freeman's request for a preliminary injunction was denied, and he eventually vacated the leased premises. On October 31, 1986 BP filed a motion for summary judgment on Freeman's PMPA claim. The district court granted BP's motion for summary judgment on November 26. Following the court's entry of judgment in favor of BP, Freeman brought this appeal.

## II.

Congress enacted the PMPA in 1978 to remedy the disparity in bargaining position between fuel suppliers and their franchisees. The Act sets forth the circumstances under which a supplier may terminate or decide not to renew a franchise and imposes certain notice requirements. Freeman contends that BP failed to comply with the PMPA when it exercised its right not to renew his franchise. He argues: (1) that because his franchise had a duration of more than one year the franchise was not a trial franchise, but rather was a regular franchise entitled to the full range of the PMPA's protections; and (2) that even if the franchise was a trial franchise under the PMPA, BP failed to comply with the Act's notice requirements.

## A.

We first consider the nature of the franchise relationship between Freeman and BP. If the franchise was a "trial franchise" as that term is defined in the PMPA, BP need only have satisfied the notice requirements of section 2804 in effecting the nonrenewal. *See* 15 U.S.C. § 2803(a)(1), (c)(1) (1982). If the franchise was not a trial franchise, however, BP was required both to justify its nonrenewal under section 2802 and give the notice of nonrenewal required by section 2804. *See id.* § 2802(a)–(b).

The term "trial franchise" is defined in section 2803(b)(1)–(2). Although this section sets forth a number of prerequisites to the formation of a trial franchise, the only one at issue here is the requirement that the franchise have an "initial term ... which is for a period of not more than 1 year." *Id.* § 2803(b)(1)(C). Freeman argues that although the franchise agreement called for an initial term of one year, the franchise was not a trial franchise because it was not *actually terminated* until some fourteen months after its formation. We disagree.

Freeman's argument is supported by neither the letter or spirit of the PMPA. The franchise agreement between Freeman and BP fully satisfied the requirements of a trial franchise as set forth in section 2803(b), including the requirement that the franchise have an initial term of not more than one year.[2] Because BP did not decide

---

**1.** The term "trial franchise" is defined in 15 U.S.C. § 2803(b)(1) (1982).

**2.** By its terms the franchise agreement between Freeman and BP ran from July 1, 1985 to June 30, 1986.

to discontinue the franchise until May 1986 it simply allowed Freeman to remain in possession an additional two months so that it could comply with the PMPA's notice requirements. Nothing in the Act suggests that such an action converts what the parties agreed would be a trial franchise into a regular franchise.

Indeed, Freeman's argument runs counter to the policies behind the PMPA. Although Congress passed the PMPA to protect franchisees from arbitrary or discriminatory termination of their franchise, it also recognized franchisors' legitimate need to be able to terminate franchises under appropriate circumstances. *See* S.Rep. No. 731, 95th Cong., 2d Sess. 19, *reprinted in* 1978 U.S.Code Cong. & Admin. News 873, 877. Thus, the Act seeks to achieve both balance and flexibility in the relationships between suppliers and their franchisees. *Id.*

The trial franchise concept furthers Congress' goal of bringing balance and flexibility to franchise relationships covered by the PMPA. It allows fuel suppliers to enter into a short-term, relatively non-committal arrangement which if successful can evolve into a regular franchise relationship.

■ If we were to accept Freeman's argument—that, by failing to *effectively terminate* its trial franchisee's rights under the franchise agreement within one year, a supplier converts its trial franchise into a regular franchise—the trial franchise concept would be seriously weakened. Because the PMPA requires franchisors to notify their franchisees at least ninety days prior to the date termination or nonrenewal of a franchise takes effect, *see* 15 U.S.C. § 2804(a)(2), franchisors would have less than nine months to evaluate a franchisee's performance and decide whether to renew a trial franchise. We doubt that Congress intended such a result, and agree with the district court that Freeman's argument "improvidently blur[s] the distinction between regular and trial franchises that Congress strove to create under the [PMPA]." We therefore hold that a franchise that has an initial term of not more than one year and that meets all the other requirements of section 2803(b)(1) is a trial franchise without regard to whether the franchisee's rights are effectively terminated on or before the expiration of the franchise agreement.

## B.

■ Having determined that Freeman's franchise was a trial franchise we must decide whether BP complied with the PMPA in deciding not to renew it. As we noted earlier BP need only have complied with the notice requirements of section 2804. *See* 15 U.S.C. § 2803(a)(1), (c)(1) (1982).

Section 2804 sets forth the notice a franchisor must give a franchisee before terminating or failing to renew the franchise. Although the section contains a number of requirements concerning both the timing and content of the notice, the only one at issue in this case is the requirement that the notice be given "not less than 90 days prior to the date on which such termination or nonrenewal takes effect." *Id.* § 2804(a)(2). Freeman contends that because the May 23 notice he received from BP was less than ninety days prior to the June 30 expiration of the franchise agreement it was defective under section 2804(a)(2). BP on the other hand, argues that it satisfied section 2804(a)(2) because it gave Freeman the required notice more than ninety days prior to August 31, the date the franchise was actually terminated.

We agree with BP that the notice it gave Freeman on May 23 satisfied section 2804(a)(2). The plain language of the statute indicates that the date from which the ninety day notice requirement is measured is the date the termination or nonrenewal "takes effect." *Id.* Because the termination of the franchise relationship between Freeman and BP did not *take effect* until August 31, the May 23 notice was adequate. Our interpretation of section 2804(a)(2) is consistent with both the policies behind the PMPA and the decisions of most of the courts that have faced this issue. *See Day Enters., Inc. v. Crown Cent. Petroleum Corp.*, 529 F.Supp. 1291, 1299 (D.Md.1982); *Ferriola v. Gulf Oil*

*Corp.,* 496 F.Supp. 158, 161 (E.D.Pa.1980), *aff'd,* 649 F.2d 859 (3d Cir.1981); *Kesselman v. Gulf Oil Corp.,* 479 F.Supp. 800, 802–03 (E.D.Pa.1979), *aff'd,* 624 F.2d 1090 (3d Cir.1980) (all holding that the ninety day notice requirement of section 2804(a)(2) is measured from the date of actual termination rather than the date the franchise agreement expired). *But see Lasko v. Consumers Petroleum of Conn., Inc.,* 547 F.Supp. 211, 220–21 (D.Conn.1981) (using date of expiration of franchise agreement).

We must also reject Freeman's argument for the same reason we rejected his argument that his franchise had been converted to a regular franchise. The *Ferriola* court summed up the situation well:

> If I were to adopt Ferriola's construction, that notice must be given ninety days before the termination date specified in the lease, the franchisor would be placed in a position of giving notice of intent to terminate at the same time it was negotiating terms for a renewal of the franchise agreement, to protect itself in the event that negotiations failed. Not only would this impede negotiations, since the franchisee would then be negotiating "under the gun," it would expose the franchisor to charges that it was not negotiating in good faith since it had already given notice of termination. Clearly a more reasonable construction is that if negotiations fail, the franchisee must be given at least ninety days notice in order to make whatever arrangements are necessary to cease doing business as a franchisee, regardless of when the agreement expired.

496 F.Supp. at 161.

### III.

In short we conclude that BP complied with the PMPA when it decided not to renew Freeman's franchise. The district court's judgment is therefore

AFFIRMED.