**CINCO J, INC., Plaintiff–Appellee,**

v.

**Donald K. BOEDER, Defendant–Appellant.**

**No. 90–8222.**

United States Court of Appeals, Fifth Circuit.

Jan. 4, 1991.

---

Timothy J. Herman, Craig A. Morgan, Brown Maroney & Oaks Hartline, Austin, Tex., for defendant-appellant.

Donald H. Grissom, Austin, Tex., for plaintiff-appellee.

Before GOLDBERG, KING, and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge.

In 1969 Donald Boeder began operating a gas station on I–10 in Sequin, Texas as a franchisee of Exxon. Sometime before May 1, 1985, Exxon sold the station to a partnership, which in turn leased the station to Cinco J, Inc., a wholesale distributor of petroleum products.

On May 1, 1985, Cinco and Boeder entered into a three-year sublease with a May 1, 1988 termination date. This sublease was similar to the lease agreements that Boeder had previously had with Exxon. Neither party disputes that a franchise relationship existed between Cinco and Boeder.

Cinco decided to convert the I–10 station into a convenience store with a self-service gas pump. Company representatives met with Boeder in the fall of 1985 to discuss the possible conversion. Boeder agreed to enter into a lease with Cinco for Herman's Corner, another station in Sequin, and to terminate his lease for the I–10 station.

Throughout 1986 and 1987, Cinco continued negotiations with Boeder about the I–10 station. Cinco wanted to keep Boeder as the lessee of that property after the conversion was complete.

On February 2, 1988 Cinco delivered a letter notifying Boeder that the lease of the I–10 station would end June 1, 1988, one month later than May 1, 1988—the termination date of the May 1, 1985 lease. The letter explained that Cinco planned to convert the station into a convenience store. In March 1988 the parties met; Boeder convinced Cinco to extend the lease through the summer of 1988, because summer was the most profitable season of the year.

On May 11, 1988, Cinco revoked its February 2 termination notice and advised Boeder that it was renewing the lease for four months, to continue on a month-to-month basis thereafter. The May 11 letter told Boeder that unless he ratified the new lease by June 1, 1988, Cinco would consider the offer rejected.

During May, the parties continued to negotiate. Boeder revealed that he wanted two new three-year leases with Cinco for the two stations. On June 6, 1988, Cinco informed Boeder by letter that the 1985 lease would terminate on September 6, 1988 because Boeder had failed to agree to the new lease terms. Since September 1988, Boeder continues to operate the I–10 station, paying rent monthly.

The district court concluded that Cinco had complied with all requirements of proper nonrenewal under the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. § 2804 (1988), including the 90–day notice requirement. It also found that nonrenewal following a failure to agree to new lease terms requires only that the lessor show that the nonrenewal decision was made in good faith, in the normal course of business, and not for the purpose of ending the franchise relationship. The court concluded that Cinco had proved these three facts and ordered Boeder to vacate the premises of the I–10 station.

*Standard of Review*

The facts are essentially undisputed. Whether Cinco's nonrenewal of the franchise relationship complied with the notice requirements of the PMPA is a question of statutory construction. It is therefore a question of law, which is reviewed *de novo* by this Court. *United States v. McConney,* 728 F.2d 1195, 1202 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984); *see AFCO Steel, Inc. v. TOBI Engineering, Inc.,* 893 F.2d 92, 93 (5th Cir.1990); *In re Exquisito Servs., Inc.,* 823 F.2d 151, 152 (5th Cir. 1987).

*Notice Provisions of the PMPA*

Section 2804(a) of the PMPA provides, in relevant part:

> Prior to termination of any franchise or nonrenewal of any franchise relationship, the franchisor shall furnish notification of such termination or such nonrenewal to the franchisee ... not less than 90 days prior to the date on which such termination or nonrenewal takes effect.

15 U.S.C. § 2804(a) (1988).

Boeder contends that PMPA section 2804(a) requires a franchisor who seeks to end a franchise relationship to give notice 90 days before the date on which the lease was to expire. He argues that since Cinco gave notice 89 days before the lease expiration date, the notice was ineffective and the lease was automatically renewed for another three-year term. According to Boeder's argument, at midnight on February 1, 1985, exactly 90 days before the expiration of the lease, Cinco was irretrievably trapped in a new three-year lease with Boeder.

We disagree. The plain language of the statute indicates that the 90–day notice requirement is measured from the date the termination or nonrenewal *takes effect.* *See* 15 U.S.C. § 2804(a)(2) (1988). In enacting the PMPA, Congress reached a compromise that provides franchisees important procedural rights but allows franchisors significant latitude in responding to changing market conditions.[1] We believe that

---

**1.** *See Petroleum Marketing Practices Act, 1977:*    *Hearing on S. 19; S. 743; and H.R. 130 Before*

Congress intended to provide franchisees with a full 90 days' notice before any changes in the relationship could occur. We do not believe, however, that Congress intended to saddle franchisors with long-term, immutable commitments merely because they failed to send a notice exactly 90 days before the lease expiration date.

There is little Fifth Circuit authority for interpreting the notice provisions of the PMPA. Our interpretation of these provisions, however, is consistent with the decisions of most courts that have faced the issue. *See, e.g., Freeman v. BP Oil, Inc., Gulf Prods. Div.,* 855 F.2d 801 (11th Cir. 1988); *Day Enters., Inc. v. Crown Cent. Petroleum Corp.,* 529 F.Supp. 1291, 1299 (D.Md.1982); *Ferriola v. Gulf Oil Corp.,* 496 F.Supp. 158, 161 (E.D.Pa.1980), *aff'd,* 649 F.2d 859 (3d Cir.1981). *But see Lasko v. Consumers Petroleum of Conn., Inc.,* 547 F.Supp. 211, 220–21 (D.Conn.1981).

In *Freeman,* an Eleventh Circuit case with analogous facts, the court concluded that notice was adequate because it was given 90 days before the termination or nonrenewal *took effect,* even though it was given less than 90 days before the expiration date stated in the franchise agreement. *See Freeman v. BP Oil, Inc., Gulf Prods. Div.,* 855 F.2d 801 (11th Cir.1988). The Eleventh Circuit reasoned that this interpretation of the statute was reasonable because otherwise

> the franchisor would be placed in a position of giving notice of intent to terminate at the same time it was negotiating terms for a renewal of the franchise agreement, to protect itself in the event that negotiations failed. Not only would this impede negotiations, since the franchisee would then be negotiating "under the gun," it would expose the franchisor to charges that it was not negotiating in good faith since it had already given notice of termination.

*Id.* at 804.

We agree. This interpretation is consistent with one of the few relevant Fifth Circuit cases. *See Halder v. Standard Oil Co.,* 642 F.2d 107 (5th Cir.1981). *Halder* emphasizes that the PMPA requires only that the franchise relationship, and not the franchise itself, be renewed.

> The dichotomy in the Act between "franchise" and "franchise relationship" recognizes the right of a franchisor to impose new terms after expiration of an original lease, but limits that right by a requirement that the franchisor must renew the "relationship".... Under the Act, [the franchisor] was at liberty not to renew the particular existing lease after its termination date. It was, however, required to continue its "relationship" with [the franchisee] albeit under different terms.... [The parties] did continue their relationship under the provisions of the existing lease, on a month-to-month basis. Continuation of a relationship is all that the Act requires....

*Halder,* 642 F.2d at 111.

This interpretation of the notice provisions, however, does not end our inquiry. Once we have decided that passage of the 90th day before the lease termination date does not automatically foreclose a franchisor's options, we must consider the consequences of the confusing sequence of notices, revocations, and other communications between the parties.

*Right of First Refusal*

The first notice on February 2, 1988 was effective when given because it informed Boeder that the lease would end on June 1, 1988. Boeder received the notice, therefore, 90 days before the termination or nonrenewal was to take effect. In this notice, Cinco announced its intention to materially alter the premises and expressed its desire to keep Boeder as the franchisee of the converted business.

■ If that notice had announced Cinco's unilateral decision to end the franchise relationship, Cinco would have been obligated to offer Boeder an opportunity to buy the

---

the Subcomm. on Energy Conservation and Regulation of the Senate Comm. on Energy and Natural Resources, No. 61, 95th Cong., 1st Sess. 326–27 (statement of Chevron, U.S.A., Inc.); *id.* at 169 (statement of Charles Matties, President, National Congress of Petroleum Retailers); *Brach v. Amoco Oil Co.,* 677 F.2d 1213, 1223 (7th Cir.1982).

property under PMPA section 2802(b)(3)(D). This section provides that a franchisor who determines in good faith to sell, alter, or convert the station may refuse to renew the franchise relationship, but it must first offer the dealer an opportunity to purchase the property. The notice, however, did not express any intention of ending the relationship. Moreover, at the request of Boeder, that notice was soon revoked.

Boeder asked Cinco to allow him to operate the station through the summer. Cinco agreed and revoked the first termination notice. When Cinco offered Boeder a new four-month lease, however, Boeder refused to sign it.

Then on June 6, 1988, Cinco issued another termination notice informing Boeder that the ·franchise relationship would end September 6, 1988. This notice, like the previous notice, was timely because it was given 90 days before the date that the termination or nonrenewal was to take effect. This second termination notice informed Boeder that the relationship must end because the parties had failed to agree on the terms of the proposed lease.

We agree with the Ninth Circuit that section 2802(b)(3)(D) applies only if the franchisor seeks to terminate the franchise relationship. *See Svela v. Union Oil Co.*, 807 F.2d 1494, 1500–01 (9th Cir.1987); *Valentine v. Mobil Oil Corp.*, 789 F.2d 1388, 1390–91 (9th Cir.1986). If the franchisor wants to keep the franchisee as proprietor of the converted station but fails in good faith efforts to negotiate the terms of the new arrangement, a different section of the PMPA applies. *See Svela*, 807 F.2d at 1500–01; *Valentine*, 789 F.2d at 1390–91.

■ Section 2802(b)(3)(A) provides that a franchisor may terminate the franchise relationship if the parties cannot agree to changes or additions to the provisions of the franchise. 15 U.S.C. § 2802(b)(3)(A) (1988). The franchisee does not have a right of first refusal in this situation. The franchisor must show, however, that the decision to make the changes was made in good faith, in the normal course of business, and not for the purpose of preventing a renewal of the franchise relationship. *Id.*

We believe that section 2802(b)(3)(A), and not section 2802(b)(3)(D), applies to this case because the parties tried, but failed, to ·agree to new terms. *See Valentine*, 789 F.2d at 1390–91. Even though Cinco clearly intended to convert the full-service station to a self-service pumper, it consistently tried to keep Boeder as the franchisee.

■ The district court entered a finding of fact that Cinco's decision to change the business was made in good faith, in the normal course of business, and not for the purpose of terminating the franchise relationship with Boeder. *See Baldauf v. Amoco Oil Co.*, 553 F.Supp. 408, 411 (W.D. Mich.1981), *aff'd*, 700 F.2d 326 (6th Cir. 1983). This finding is not clearly erroneous.

The record reveals that the parties negotiated for many months in an effort to reach an agreement. Cinco attempted to accommodate Boeder in several ways before finally terminating the franchise relationship. At Boeder's request, Cinco extended the lease on the I–10 station through the summer so that Boeder could operate the station during the most profitable season. In addition, Cinco gave Boeder a new lease for the Herman's Corner station.

*Conclusion*

■ We hold that Cinco provided adequate notice of nonrenewal under section 2804(a)(2) of the PMPA because Boeder received notice 90 days before the termination or nonrenewal was to take effect. In addition, we hold that a franchisee's right to purchase the property under section 2802(b)(3)(D) arises only when the franchisor unilaterally seeks to terminate the franchise relationship. In contrast, when the franchisor wants to maintain the relationship but the two parties fail to agree on proposed changes, section 2802(b)(3)(A) controls. This section affords the franchisee no right of purchase or right of first refusal.

The district court's judgment is AFFIRMED.