**L.M.P. SERVICE, INC.**

v.

**SHELL OIL COMPANY, et al.**

**No. CIV. A. DKC 99–771.**

United States District Court,
D. Maryland,
Southern Division.

Feb. 22, 2000.

See also, 116 F.Supp.2d 645.

James L. Parsons, Jr., Harry C. Strom, Abrams, West, Storm & Diamond, PC, Bethesda, MD, for L.M.P. Service, Inc., plaintiff.

Richard M. Barnes, Ian Gallacher, Goodell, DeVries, Leech & Gray, Baltimore, MD, Patricia McHugh Lambert, Thomas J. Gisriel, Hodes Ulman Pessin & Katz, P.A., Towson, MD, for Shell Oil Company, Motiva Enterprises, LLC, defendants.

### *MEMORANDUM OPINION*

CHASANOW, District Judge.

This case stems from a motor fuel franchise agreement between Plaintiff and Defendants. Pending before the court are Plaintiff and Defendants' cross-motions for summary judgment (papers no. 12, 17). The issues are fully briefed, and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons stated more fully below, the court will DENY Defendants' motion for summary judgment and GRANT Plaintiff's cross-motion for summary judgment.

### I. Background

Plaintiff is a Maryland corporation engaged in the retail service station, automo-

tive repair and carwash business in Rockville, Maryland. Plaintiff has operated the business since 1989 pursuant to a series of franchise agreements with Defendant Shell and Defendant Motiva, the successor-in-interest to Shell's most recent agreement with Plaintiff for the period April 1, 1994 to March 31, 1999. Defendants are both Delaware corporations engaged in the business of marketing motor fuel and related products.

In October and November of 1998, James Deakin, the Central Maryland district sales manager for Motiva, assessed the performance of Motiva's service stations in Montgomery County. Mr. Deakin initially determined that Plaintiff's station was performing below comparable stations in the region, and accordingly decided to solicit third party offers on the premises. On December 3, 1998, Deakin received an initial offer of $1.2 million in cash. Defendants' Motion Exhibit B. Based upon this offer, Mr. Deakin made a decision not to renew the franchise agreement with Plaintiff but instead to sell the premises. Mr. Deakin thus provided notice to Plaintiff in a letter dated December 15, 1998. Defendant's Motion Exhibit C.

On December 21, 1998, Plaintiff, through an agent, made an offer to Motiva to purchase the premises for $1.04 million, $160,000 less than the earlier offer. On February 10, 1999, Motiva received a third offer from Mr. Aris Mardirossian for $1.2 million plus a ten-year supply agreement for gasoline products. The purchase price included "all marketing equipment, including underground storage tanks, car wash, and all gasoline dispensers necessary for the operation of a gasoline/convenience store/carwash." The supply provision included an unnamed concession off the existing dealer tank wagon price.

On February 11, 1999, Motiva delivered a letter to Plaintiff informing it of the most recent offer and informing it of the right of first refusal. On February 23, 1999, Plaintiff's counsel wrote to Mr. Deakin to clarify the supply agreement:

I view those as buyer contingencies which may be waived at the buyer's discretion. The provisions related to a continued Shell supply agreement are provisions that fall within that category. Please confirm that this is consistent with Shell's understanding. If Shell's understanding is different, then I have a question about whether there are truly grounds for a nonrenewal of the relationship. If Shell is insisting on a supply agreement, then it obviously wants to continue a franchise relationship—not end it.

Defendants' Motion Exhibit G. On March 1, Motiva's representative delivered a copy of an "Offer to Purchase" drafted by Motiva, and including a provision for a supply agreement. Plaintiff's Motion Exhibit 17. Defendant also wrote a letter on March 8, 1999, advising Plaintiff's counsel that the supply agreement was an essential term of the offer, as "additional consideration to the purchase price of $1.2 million." Defendants' Motion Exhibit I.

On March 18, 1999, Plaintiff initiated the instant law suit.

## II. Standard of Review

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The movant, then, bears two burdens. First, the movant must show that no genuine issues of material fact remain for the fact finder to determine at trial. Second, the movant must show that the law is in his favor.

Conversely, the non-movant must demonstrate that genuine issues of material

fact exist. *See Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505. This burden "is particularly strong when the non-moving party bears the burden of proof." *Pachaly v. City of Lynchburg,* 897 F.2d 723, 725 (4th Cir.1990). A fact is material for summary judgment purposes if, when applied to the substantive law, it affects the outcome of the litigation. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A non-movant cannot create a genuine issue of material fact by resting upon her own mere allegations or denials contained in her pleadings, Fed. R.Civ.P. 56(e), nor can she create a dispute of fact by relying upon "mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985). Instead, in order for a genuine issue of material fact to exist, there must be sufficient evidence upon which a jury could return a verdict in the non-movant's favor. *See Shealy v. Winston,* 929 F.2d 1009, 1012 (4th Cir.1991).

### III. Discussion

Plaintiff brings this suit pursuant to Title I of the Petroleum Marketing Practice Act (PMPA), 15 U.S.C. § 2801, et seq. Congress enacted the PMPA to protect franchisees "from arbitrary or discriminatory termination or non-renewal of their franchises." S. REP. No. 95–731, at 15 (1978), *reprinted in* 1978 U.S.C.C.A.N. 873, 874. "Numerous allegations have been made before congressional committees investigating petroleum marketing problems that terminations and non-renewals, or threats of termination or non-renewal, have been used by franchisors to compel franchisees to comply with marketing policies of the franchisor." *Id.* at 17, 1978 U.S.C.C.A.N. at 876. In light of the disparity of bargaining power disadvantaging the franchisee, Congress limited the situations in which a franchisor may terminate or fail to renew an agreement. The PMPA generally prohibits termination of a franchise or nonrenewal of a franchise relationship unless the franchisor both complies with the notification provisions of the statute and bases its decision upon a ground described in the statute. 15 U.S.C. § 2802(a). Two of the possible grounds for nonrenewal are a determination made in good faith and in the normal course of business to sell the premises, *id.* § 2802(b)(3)(D)(i)(III), and a failure to agree to changes to the provisions of the franchise, *id.* § 2802(b)(3)(A).

■ In this case, Defendants provided notice to Plaintiff, according to the requirements of § 2804, stating its ground for nonrenewal to be its determination to sell the premises. A decision to sell the premises under the PMPA triggers a second duty, to make a "bona fide offer to sell, transfer, or assign to the franchisee such franchisor's interests in such premises," or offer the franchisee "a right of first refusal of at least 45–days duration of an offer, made by another, to purchase such franchisor's interest in such premises." *Id.* § 2802(b)(3)(D)(iii). Defendants argue that they complied with the requirements of the statute and therefore should be allowed to nonrenew the franchise relationship with Plaintiff. However, defendants have ignored that § 2802(b)(3)(D) applies only where the franchisor wishes to end the franchise relationship. *See Svela v. Union Oil Co.,* 807 F.2d 1494, 1501 (9th Cir.1987) ("[S]ection 2802(b)(3)(D) applies where the franchisor unilaterally determines that it will not renew at all."); *Cinco J, Inc. v. Boeder,* 920 F.2d 296, 300 (5th Cir.1991) ("We agree with the Ninth Circuit that section 2802(b)(3)(D) applies only if the franchisor seeks to terminate the franchise relationship.").

■ The offer presented to Plaintiff under the rubric of the right of first refusal was an offer to sell the premises contingent upon renewing the franchise in a supply agreement. *See* 15 U.S.C. § 2801(1) ("The term 'franchise' includes any contract pertaining to the supply of motor fuel which is to be sold, consigned or distributed ... under a trademark owned or controlled by a refiner."). In a creative effort to dodge the protections for

franchisees under the PMPA, Defendants attempted to force a substantial change in the franchise relationship (conversion to a franchisee-owned property) using a threat of nonrenewal. The PMPA offers important protections to franchisees from arbitrary changes in the terms of the franchise agreement. *See Valentine v. Mobil Oil Corp.,* 789 F.2d 1388, 1391 (9th Cir.1986) ("Any changes must be proposed by the franchisor on the basis of determinations made in good faith, in the normal course of business and not for the purpose of preventing renewal of the franchise relationship."). Congress anticipated that franchisors and franchisees might not agree upon new terms of the franchise, and allowed that failure to agree to be a grounds for nonrenewal. 15 U.S.C. § 2802(b)(3)(A). However, Defendants in this case never approached Plaintiff directly to negotiate new terms of the franchise, but rather attempted to force Plaintiff to choose the terms of its proposed agreement with Mr. Mardirossian or else suffer nonrenewal. *See Davy v. Murphy Oil Corp.,* 488 F.Supp. 1013, 1017 (W.D.Mich.1980) ("Defendant is not free to anticipate that the parties will not be able to agree on a new lease and, therefore, anticipate that the nonrenewal is based upon a ground set forth in the Act.").

Motiva asserts in its papers, "Certainly, Plaintiff is entirely in error in asserting that there is some illegality in the former property owner's having a supply agreement with the new owner, whether that new owner is a third party or the former franchisee itself." Defendants' Reply at 21. Defendants have missed the point entirely. They are correct that having a supply agreement with a new owner does not violate the PMPA, but making a supply agreement a term of the offer to sell the premises under § 2802(b)(3)(D) does. Defendants cite both *Keener v. Exxon Co.,* 32 F.3d 127 (4th Cir.1994) and *Arnold v. Amoco Oil Co.,* 872 F.Supp. 1493 (W.D.Va.

1995), but these cases only buttress Plaintiff's argument. In both cases, the franchisors offered the franchisee a right of first refusal on an unencumbered sale of the premises. In *Keener,* the Fourth Circuit upheld a right to first refusal where the franchisor negotiated with the third party an option to repurchase the station if the franchisee ceased selling its brand of gasoline, but made the offer to sell to the original franchisee without a repurchase option. *See* 32 F.3d at 129. Similarly, in *Arnold,* the franchisor severed a third party offer to buy the service station from an accompanying offer for a supply agreement, and presented only the offer to sell for the purposes of the right of first refusal without encumbrances. *See* 872 F.Supp. at 1500 n. 6 (noting that the franchisee could negotiate a similar supply agreement). Thus, unlike here, where Defendants tried to require a franchise relationship, in these cited cases the offer to sell the premises under § 2802(b)(3)(D) stood alone.

Defendants must renew the franchise relationship with Plaintiff absent proper grounds under the PMPA. Defendants have failed to show that they acted in accordance with the statute, and therefore the court will rule in Plaintiff's favor.

## IV. Conclusion

For the foregoing reasons, the court will DENY Defendants' motion for summary judgment and GRANT Plaintiff's cross-motion for summary judgment. The court will discuss with the parties the proper remedy for the violation. A separate order will be entered.[1]

1. In light of this court's orders, the court will DENY AS MOOT Plaintiff's motion to compel

(paper no. 17) and DENY Defendants' motion for relief from the preliminary injunction (pa-

per no. 25).  Defendants have filed no response to Plaintiff's motion to seal (paper no. 16), and therefore the court will GRANT the motion to seal Plaintiff's Cross–Motion for Summary Judgment with its attached exhibits (paper no. 17).