James C. SVELA, Plaintiff-Appellant,

v.

UNION OIL COMPANY OF CALIFORNIA, a California corporation, Defendant-Appellee.

No. 85–4215.

United States Court of Appeals, Ninth Circuit.

Submitted Nov. 6, 1986.*

Decided Jan. 13, 1987.

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.

App.P. 34(a) and Ninth Circuit Rule 3(f).

John L. Langslet, Portland, Or., for plaintiff-appellant.

Michael D. Williams, Portland, Or., for defendant-appellee.

Before ANDERSON, HUG, and CANBY, Circuit Judges.

HUG, Circuit Judge:

This case involves a dispute over the nonrenewal of a service station franchise. The issues we address are: (1) did Union Oil's nonrenewal letter comply with the notice requirements of the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2804(c)(3)(A) (1982); (2) may an oil company condition franchise relationship renewal on the conversion of a gas station from full-serve to fast-serve, resulting in the removal of the mechanic repair business; and (3) were the district court's findings that Union Oil acted in good faith and in the normal course of business, as required by 15 U.S.C. § 2802(b)(3)(A), clearly erroneous. The district court found that Union Oil had fully complied with the PMPA and entered judgment for the defendant. We affirm.

## FACTS

From 1970 until 1983, Svela, appellant, operated a service station in Portland, Oregon under a full-serve lease and a Retail Dealer Motor Fuel Purchase Contract with Union Oil, appellee. The final lease and retail dealer contract between Svela and Union ran from November 1, 1981 to September 30, 1983.

Svela operated a full-serve station. In addition to selling gasoline, a full-serve dealer sells tires, batteries and other automotive accessories, and services and repairs automobiles. In contrast, a fast-

serve station only sells gasoline and the dealer is prohibited from operating a mechanic repair business.

Union leases the site of Svela's former service station from a third party. This ground lease had a term ending October 31, 1983, with an option to renew for five years.

On June 24, 1983, Union sent a nonrenewal letter to Svela stating that:

> [Y]our service station has failed to provide Union Oil Company a reasonable Return on Investment under the current full service operation and, for this reason, Union will not exercise its option to extend the aforementioned Site Lease with the continuation of the service station as a full-serve facility.
>
> A study of your service station's marketing area ... indicates that your service station may become economically viable as a full fast-serve. Based upon this analysis, Union Oil Company is willing to reconsider its decision to not exercise its option to extend the Site Lease in order to continue to do business at this location by ... convert[ing] the service station to a full fast-serve for the sale of gasoline only, provided you are willing to accept a renewal of your franchise ... as a full fast-serve franchise.
>
> . . . .
>
> If you elect not to operate said service station under the terms and conditions of a fast-serve facility, Union will not exercise its option to extend and your Service Station Lease and Retail Motor Fuel Purchase Contract will automatically expire by its term on September 30, 1983.

This letter and the decision not to continue Svela's station as a full-serve were the culmination of months of discussion at Union. Union requires area managers to justify the continued operation of leased service stations that have a monthly average volume of less than 35,000 gallons. Svela's was such a station and on June 8, 1983, the Northwest Division Sales Manager for Union Oil, Dennis Lamb, recommended that Svela's site lease not be renewed. His decision was based on the steady decline of Svela's gasoline sales from 1979 to 1982, from a monthly average of 28,000 gallons to 17,700 gallons. Also, Union's net margin for Svela's station in the first four months of 1983 was a loss of $18,447.

Lamb changed his recommendation when a marketing survey conducted by the MPSI Group of Tulsa, Oklahoma ("MPSI") for Union's Portland stations showed that Svela's station should be achieving sales of 45,000 gallons per month. The study also showed that a conversion to fast-serve would create sales of 60,000 gallons per month. On June 16, as a result of this study, the regional office denied Lamb's original recommendation to allow the site lease to lapse and also directed Lamb to convert the station to fast-serve.

Svela declined the fast-serve lease and left the station at the end of his lease term on September 30, 1983. Union has subsequently leased the station to another manager as a fast-serve.

The district court found that Union elected not to renew Svela's full-serve franchise because it was not receiving a reasonable return on its investment, and that the notice of nonrenewal properly stated this reason and otherwise complied with the PMPA's notice requirements contained in section 2804(c).

Once the franchisee establishes that the franchise relationship has not been renewed, the franchisor bears the burden of establishing as an affirmative defense that nonrenewal was permitted under one of the statutorily enumerated grounds. 15 U.S.C. § 2805(c). Union contends it did not renew Svela's franchise relationship because the parties failed to agree to changes or additions to the provisions of the franchise, a permissible ground for nonrenewal under section 2802(b)(3)(A).[1] The district court

---

1. 15 U.S.C. § 2802(b)(3)(A) provides the following ground for renewal:

(A) The failure of the franchisor and the franchisee to agree to changes or additions to the provisions of the franchise, if—

held that the lease was not renewed due to Svela's failure to accept Union's offer of a fast-serve lease; that Union's decision to convert the station to a fast-serve was made in good faith and in the normal course of business; and that Union's decision was not made for the purpose of preventing the renewal of the relationship. The district court therefore entered judgment for Union Oil.

Svela contends that the nonrenewal letter did not comply with the notice requirements of the PMPA; that the only allowable grounds for nonrenewal when a station is being converted from full-serve to fast-serve are contained in section 2802(b)(3)(D) and that Union failed to comply with that section's requirements; and that if section 2802(b)(3)(A) is applicable, the district court's findings that Union acted in good faith and in the normal course of business are clearly erroneous.

## I.

## NOTICE

### A. *Standard of Review*

Whether Union's nonrenewal letter complied with the notice requirements of the PMPA is a question of statutory interpretation and application. The interpretation of a statute is a question of law which is reviewed *de novo. Trinity County Public Utilities District v. Harrington,* 781 F.2d 163, 165 (9th Cir.1986). The nature of the application of the law to the facts in cases of statutory application "requires us to consider legal concepts in the mix of fact and law and to exercise judgment about the values that animate legal principles, [and] the concerns of judicial administration will favor the appellate court, and the question should be classified as one of law and reviewed *de novo." United States v. McConney,* 728 F.2d 1195, 1202 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984); *see also*

*Trustees of Amalgamated Ins. Fund v. Geltman Industries,* 784 F.2d 926, 929 (9th Cir.) (interpretation and application of provisions of ERISA reviewed *de novo* ), *cert. denied,* —— U.S. ——, 107 S.Ct. 90, 93 L.Ed.2d 42 (1986).

### B. *Reasons for Nonrenewal*

■ The PMPA requires that a franchisor's notice of nonrenewal state the "reasons" for nonrenewal. 15 U.S.C. § 2804(c)(3)(A). "Reasons" and "grounds" are distinct concepts, and the fact that the reasons stated in the notice are insufficient as grounds for nonrenewal under the PMPA does not mean the notice is insufficient. *Moody v. Amoco Oil Co.,* 734 F.2d 1200, 1211 (7th Cir.), *cert. denied,* 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984); *Brach v. Amoco Oil Co.,* 677 F.2d 1213, 1225–26 (7th Cir.1982). The reasons must, however, be specific enough for the franchisee to determine whether nonrenewal rests on lawful grounds. *Brach,* 677 F.2d at 1226; *see Hifai v. Shell Oil Co.,* 704 F.2d 1425, 1430 (9th Cir.1983).

■ While a mere statement that renewal was "uneconomical" does not provide enough information for a franchisee to verify the franchisor's compliance with the PMPA, additional information as to the reasons why a station is uneconomical will bring the notice within the PMPA's requirements. *Sutton v. Atlantic Richfield Co.,* 539 F.Supp. 658, 660 (C.D.Cal.1982) (case inappropriate for summary judgment since Sutton had knowledge other than that provided in the notice which may have been enough for him to verify his rights). The notice sent by Union discusses the MPSI study and tells Svela a change to fast-serve will make the station economically viable. Svela also knew that Union was concerned with his low sales. Therefore, Svela had enough information, and the reasons contained in the notice complied with the PMPA.

(i) such changes or additions are the result of determinations made by the franchisor in good faith and in the normal course of business; and

(ii) such failure is not the result of the franchisor's insistence upon such changes or additions for the purpose of preventing the renewal of the franchise relationship.

## C. Statement of Intention to Terminate

A nonrenewal letter must state an intention to terminate and include the reasons for nonrenewal. 15 U.S.C. § 2804(c)(3)(A). So long as these requirements are met, even conditional language is permissible. See Hifai, 704 F.2d at 1427, 1430.

Svela contends that Union's notice was conditional, rather than the required statement of an intention to terminate, relying on Davy v. Murphy Oil Corp., 488 F.Supp. 1013 (W.D.Mich.1980). The court in Davy found that a notice of cancellation which stated no reasons, and said only that a company representative would discuss terms of a new lease with the franchisee later, was insufficient notice. That was considered a conditional notice since the franchisor did not know, at the time notice was given, whether the parties would agree to a new lease. Id. at 1016–17. Conditional language was also condemned in Mobil Oil Corp. v. Vachon, 580 F.Supp. 153, 157 (D.Mass.1983). The notice stated that "Mobil ... would like to sell the premises." Thus it was unclear whether Mobil was indeed selling the property. Because of the potential confusion, and due to additional notice problems, the court granted a preliminary injunction to the franchisee. Id. at 157–59.

Neither of these cases condemns Union's notice. The nonrenewal letter did cite clear, unequivocal economic reasons, and Svela knew what conditions were necessary for renewal—agreement to a fast-serve lease. In addition, "take it or leave it" notices such as the one here comply with the PMPA when the franchisor's decision rests on economic grounds. Baldauf v. Amoco Oil Co., 553 F.Supp. 408, 416–17 (W.D.Mich.1981) (renewal of franchise relationship conditioned upon Baldauf's acceptance of a fast-serve lease in place of his present full-serve lease), aff'd, 700 F.2d 326 (6th Cir.1983); Meyer v. Amerada Hess Corp., 541 F.Supp. 321, 330 (D.N.J.1982) (renewal of franchise relationship conditioned upon franchisee's acceptance of new rate structure which drastically increased rent).

## D. Reasons Stated in Nonrenewal Letter and Reasons Relied Upon at Trial

A nonrenewal letter must indicate by its language which section of the PMPA provides the grounds for nonrenewal, and grounds not included in the notice may not be relied upon. See Khorenian v. Union Oil Co. of California, 761 F.2d 533, 535 n. 1 (9th Cir.1985). The purpose of this requirement is to allow the franchisee to determine his rights under the PMPA:

> [W]here a notice of termination does use language found in [a specific code section], a franchisor should not thereafter be allowed to argue that by using said language it really meant something else. The franchisee's rights vary under the PMPA in relation to the ground relied on by the franchisor.

Midwest Petroleum Co. v. American Petrofina, Inc., 603 F.Supp. 1099, 1123 (E.D. Mo.1985) (emphasis in the original).

At trial, Union relied on section 2802(b)(3)(A), the failure of parties to agree to changes in the provisions of the franchise, as the ground for its nonrenewal of Svela's franchise relationship. The district court held that this section did provide the ground for nonrenewal, since Svela refused Union's offer of a fast-serve lease. Svela contends that this ground was not stated in Union's notice of nonrenewal, and therefore Union could not depend on it at trial.

Khorenian and Midwest are distinguishable from the present case. In Khorenian, one of the grounds the franchisor sought to rely on was not mentioned in any way in the letter of nonrenewal; reliance upon this ground was not allowed. 761 F.2d at 535 n. 1. In Midwest, the franchisor argued that its use of one section's language did not limit it to those grounds, and that the franchisee's actual knowledge of other grounds provided adequate notice. 603 F.Supp. at 1122. In contrast, Union's notice contained precise language: if Svela agreed to a fast-serve his franchise would be renewed, and if he

did not agree, his franchise would not be renewed. Thus, while Union's letter did not track the language of section 2802(b)(3)(A), it was clear that the failure to agree to Union's new franchise terms would cause a nonrenewal of the franchise relationship. *See also Baldauf*, 553 F.Supp. 408, 416–17 ("take it or leave it" proposal provides grounds under section 2802(b)(3)(A)); *Meyer*, 541 F.Supp. 321, 330 (same).

## II.

## CONVERSION

Svela makes two related arguments concerning Union's conversion of his lease from full-serve to fast-serve. He first contends that this conversion constituted a refusal by Union to renew the franchise relationship; for Union to have made an offer of renewal within the meaning of the PMPA, it must have offered to renew Svela's full-serve lease. Svela also argues that if such a conversion is allowed, section 2802(b)(3)(D) must provide the grounds for nonrenewal, not section 2802(b)(3)(A), upon which Union relies. Both of these contentions require an interpretation of the PMPA, a question of law which is reviewed *de novo*. *Trustees of Amalgamated Ins. Fund*, 784 F.2d at 929.

### A. *Franchise Versus Franchise Relationship*

The PMPA prohibits the nonrenewal of a "franchise relationship" unless based upon one of the specified grounds. 15 U.S.C. § 2802(a) and (b)(1). The terms "franchise" and "franchise relationship" have two distinct meanings under the PMPA.

■ "Franchise" is the combination of the franchisee's use of a franchisor's trademark, the lease of a service station, and the motor fuel supply contract. 15 U.S.C. § 2801(1)(B); *Prestin v. Mobil Oil Corp.*, 741 F.2d 268, 272 (9th Cir.1984). In contrast, the concept of a "franchise relationship" is "an entity separate from, but defined by, the 'franchise,' or contractual arrangement existing between the parties."

*Frisard v. Texaco*, 460 F.Supp. 1094, 1097 (E.D.La.1978), *quoted in Rogue Valley Stations, Inc. v. Birk Oil Co.*, 568 F.Supp. 337, 340 (D.Or.1983). The "franchise relationship" is "the respective ... obligations and responsibilities of a franchisor and a franchisee which result from the marketing of motor fuel under a franchise." 15 U.S.C. § 2801(2).

The significance of this term is "that it is the franchise relationship, as distinguished from the specific terms of a prior contract, that the franchisor must renew." Finch, *Judicial Interpretation of the Petroleum Marketing Practices Act: Strict Construction of Remedial Legislation*, 37 Bus.Law. 141, 143 (1981). Congressional intent in this matter is clear:

> [B]ecause the title contemplates changes in the specific provisions of the franchise agreement at the time of renewal, the title requires renewal of the relationship between the parties as distinguished from a continuation or extension of the specific provisions of the franchise agreement.

S.Rep. No. 731, 95th Cong., 2d Sess., 30 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 873, 888.

■ Since renewal of the franchise relationship can be based on terms and conditions substantially different from those of the original franchise, *see, e.g., Scheele v. Mobil Oil Corp.*, 510 F.Supp. 633, 635 (D.Mass.1981), Svela's contention that Union was unable to legally change his full-serve lease to a fast-serve fails.

### B. *Section 2802(b)(3)(A) or 2802(b)(3)(D)*

■ The conversion of a gas station from full-serve to fast-serve is covered by the provisions of section 2802(b)(3)(A). *Valentine v. Mobil Oil Corp.*, 789 F.2d 1388, 1390–91 (9th Cir.1986). Svela contends that such a change in his lease constituted a material alteration of the premises, and therefore the requirements of 15 U.S.C. § 2802(b)(3)(D) must be satisfied. If this section is relied on to provide grounds for nonrenewal, the franchisor must offer to sell the premises to the franchisee or

give the franchisee the right of first refusal. Since Union did not do so, Svela argues that Union has not complied with the PMPA.

In *Valentine,* the court reasoned that section 2802(b)(3)(D) applied only where the franchisor wishes to terminate the franchise relationship, and that section 2802(b)(3)(A) applies where the franchisor wants material changes in the franchise terms but wants to maintain the franchise relationship. *Accord, Baldauf,* 553 F.Supp. at 414. The distinction between the two sections is that section 2802(b)(3)(A) applies where there is a "failure ... to agree," while section 2802(b)(3)(D) applies where the franchisor unilaterally determines that it will not renew at all.

Since Union offered to renew Svela's lease as a fast-serve, Svela's contention that section 2802(b)(3)(D) must be applied is without merit. Furthermore, Svela's attempt to place his case under section 2802(b)(3)(D) must fail because it applies only to leases of 3 years or more, and his lease with Union was only for 23 months.

### III.

### GOOD FAITH AND NORMAL COURSE OF BUSINESS

Whether Union's decision not to renew Svela's full-serve lease was made in good faith and in the normal course of business are questions to be reviewed under the clearly erroneous standard. *United States v. McConney,* 728 F.2d at 1202.

For section 2802(b)(3)(A) to provide Union with an affirmative defense, Union must prove that its decision to change the franchise terms was made (i) in good faith and in the normal course of business, and (ii) the changes were not made for the purpose of preventing the renewal of the franchise relationship.

■ These requirements preclude judicial second-guessing of the economic decisions of franchisors. *See, e.g., Brach,* 677 F.2d at 1222–23. The legislative history of the PMPA indicates that courts should look to the franchisor's intent rather than to the effect of his actions, making this a subjective test. *Accord, Munno v. Amoco Oil Co.,* 488 F.Supp. 1114, 1119 (D.Conn.1980). Therefore, the fact that Union's proposed changes might make it difficult for Svela to remain in business and earn a profit is irrelevant to a finding of good faith. *See, e.g., Meyer,* 541 F.Supp. at 331. The legislation was intended to provide franchisors with flexibility to respond to changing market conditions and consumer preferences. *Munno,* 488 F.Supp. at 1119–20 and n. 10. "So long as the franchisor does not have a discriminatory motive or use the altered terms as a pretext to avoid renewal, the franchisor has met the burden required by the PMPA for determining good faith." *Baldauf,* 553 F.Supp. at 412, *quoted in Valentine,* 789 F.2d at 1392.

■ The evidence introduced at trial clearly indicates that Union's decision was made for economic reasons only and in the normal course of business. While Svela did introduce evidence indicating that Mr. Woodhead, who took over Svela's station, may have been promised the station before the nonrenewal letter was sent, this evidence was contradicted by Woodhead's own testimony and by the testimony of Larson, a Union area manager. Other than this testimony, Svela has made only bald assertions of a purpose to prevent the renewal of the lease. Therefore, the district court's findings are not clearly erroneous.

The decision of the district court is therefore AFFIRMED.