**Alfred P. VASCO, Jr.**

v.

**MOBIL OIL CORPORATION.**

**Civ. No. JFM–88–2057.**

United States District Court, D. Maryland.

Nov. 2, 1988.

Harry Storm, Bethesda, Md., for plaintiff.

Lewis Noonberg, Piper and Marbury, Baltimore, Md., for defendant.

## OPINION

MOTZ, District Judge.

This case, before the Court on cross-motions for summary judgment, raises the question of whether Section 11–304(d) of the Maryland Gasohol and Gasoline Products Marketing Act (Commercial Law) is preempted by the Petroleum Marketing Practices Act, 15 U.S.C. Section 2801–2806, if it is construed as prohibiting a franchisor from adopting a uniform, non-discriminatory policy generally requiring all of its franchisees to operate their stations on a twenty-four hour basis.[1]

### I.

The pertinent facts may be briefly stated. Plaintiff, Alfred P. Vasco, Jr., has been a franchisee of defendant, Mobil Oil Corporation, since February 1986, when he purchased a service station business being operated at 6799 Laurel Bowie Road, Bowie, Maryland. The premises at that location are owned by Mobil and leased by it to Vasco. When he purchased the business, Vasco (with Mobil's approval) was assigned the former owner's rights under a three year petroleum lease/franchise agreement with Mobil, which was to expire on September 30, 1988.

On July 10, 1987, Mobil adopted a nationwide policy providing that any service station lease being renewed is to include a provision for twenty-four hour operation if (1) a major capital expenditure has been

made at the station since 1983, (2) two retail outlets in the service station's trade area are open twenty-four hours per day or (3) one competitive service station is open twenty-four hours per day. The reason for the adoption of this policy was Mobil's perception that a standardized and uniform policy of twenty-four hour operation would help generate customer loyalty for Mobil stations. Mobil determined that the station leased by Vasco fell within the terms of the policy, and the renewal lease which it proposed to Vasco therefore contained a clause requiring twenty-four hour operation.

During the subsequent lease negotiations Mobil was willing to discuss with Vasco whether circumstances existed which, under the terms of its nationwide policy, warranted departure from the twenty-four hour operation rule.[2] However, Mobil refused to negotiate with Vasco the terms of the policy themselves.

### II.

Vasco has not asserted any claim under the PMPA. His only claim is under Section 11–304(d) of the Maryland Act.

Section 2806(a) of the PMPA preempts any state statute falling within its purview which is inconsistent with its terms. A plethora of case law has developed concerning the scope and effect of Section 2806(a). Generally, in deciding the preemption question courts have drawn a distinction between statutes which regulate grounds or procedural prerequisites for the non-renewal or cancellation of a franchise agreement, on the one hand, and those relating to substantive provisions of a franchise, on the other. *See generally Bellmore v. Mobil Oil Corp.*, 783 F.2d 300 (2d Cir.1986); *Esso Standard Oil Co. v. Dept. of Con-*

---

1. Section 11–304(d) of the Maryland Act provides as follows:

   Hours of business.—A distributor may only require a dealer to keep his retail outlet open for business for a specified number of hours per day or days per week when this requirement is negotiated in good faith by both parties and arrived at in mutual agreement and it is on the basis of a bona fide business need.

2. Mobil has also been willing to discuss and respond to concerns which Vasco has had concerning the safety of a twenty-four hour operation. After Vasco made these concerns known when filing this action, Mobil made certain improvements at the station leased by Vasco to make it more secure.

*sumer Affairs*, 793 F.2d 431 (1st Cir.1986); *Eden v. Texaco Refining & Marketing, Inc.*, 644 F.Supp. 1573 (D.Md.1986); *Lasko v. Consumer's Petroleum of Conn., Inc.*, 547 F.Supp. 211 (D.Conn 1981).

Application of the usual test is unnecessary here, however, because the express language of Section 2802(b)(3) of the PMPA is dispositive. That section provides in pertinent part, as follows:

> For purposes of this subsection, the following are grounds for nonrenewal of a franchise relationship:
>
> (A) The failure of the franchisor and the franchisee to agree to changes or additions to the provisions of the franchise, if—
>
> (i) such changes or additions are the result of determinations made by the franchisor in good faith and in the normal course of business; and
>
> (ii) such failure is not the result of the franchisor's insistence upon such changes or additions for the purpose of preventing the renewal of the franchise relationship.

By its terms this provision clearly authorizes a franchisor to make a change in the terms which it offers to its franchisees, provided that it does so in the normal course of its business, in a non-discriminatory manner and in good faith. "Good faith" has been uniformly interpreted as meaning subjective good faith, that is, an honest evaluation of the franchisor's own business needs, and in applying that standard courts are not entitled to second-guess franchisor's economic decisions. *See, e.g., Svela v. Union Oil Company*, 807 F.2d 1494, 1501 (9th Cir.1987); *Lippo v. Mobil Oil Corp.*, 802 F.2d 975, 979 (7th Cir.1986); *Baldauf v. Amoco Oil Co.*, 553 F.Supp. 408, 412 (W.D.Mich.1981), *aff'd* 700 F.2d 326 (6th Cir.1983); *Horcasitas v. Crown Central Petroleum Corp.*, 649 F.Supp. 1163, 1166 (D.Md.1986). In other words, Section 2802(b)(3) reserves to franchisors, vis-a-vis their franchisees, the power to make decisions affecting the terms of a franchise agreement.

Vasco's construction of Section 11–304(d) would bring Maryland law into direct conflict with the PMPA on this point. His only complaint against Mobil is that it unilaterally adopted a nationwide hours of operation policy and refused to negotiate its terms with him. Under the PMPA, Mobil was fully entitled to take that action, and if Vasco's construction of Section 11–304(d) were correct, it would be pre-empted.

Two additional comments are in order to define the parameters of this decision. First, although a franchisor cannot be required under Section 11–304(b) of the Maryland Act to negotiate the adoption of a nationwide policy with a franchisee, it certainly must be willing (as Mobil has here been willing) to negotiate matters relating to the applicability or implementation of that policy. Second, this Court is not now reaching the question of whether the Maryland General Assembly may enact a statute which directly prohibits a franchisor from requiring that a service station be opened longer than a specifically prescribed number of hours. Such a statute, which arguably would not be pre-empted since it would relate to the "substance" of the franchise agreement,[3] *but cf. Mobil Oil Corp. v. Karbowski*, 667 F.Supp. 927 (D.Conn.1987), would be far different from Section 11–304(d) as it is construed by Vasco. It would embody a determination made by the legislature, not by each particular franchisee, as to the proper hours of operation; it would be uniformly applicable to all franchisors, putting them in an equally competitive position; and it would constitute an express legislative judgment balancing the conflicting interests of service station operators in being guaranteed curtailed hours of operation and the consuming public's interest in expanded service.

For these reasons, Mobil's motion for summary judgment will be granted, and

---

**3.** It was on this ground that Judge Northrop upheld Section 11–304(d) in his now withdrawn opinion in *Eden, supra.*

Vasco's motion for summary judgment will be denied.