**Kambiz AJIR, et al., Plaintiffs,**

v.

**EXXON CORPORATION and Exxon Company, U.S.A., et al., Defendants.**

**No. C 93–20830 RMW.**

United States District Court, N.D. California.

June 8, 1994.

E. James McGuire, Bart Prom, Nancy E. Perham, McGuire, Prom & LaLanne, James Penrod, Craig S. Spencer, Hassard, Bonnington, Rogers & Huber, San Francisco, CA, for plaintiffs.

John H. Rochefort, Kurt Osenbaugh, Eugene Burris, McClintock, Weston, Benshoof, Rochefort, Rubalcava & MacCuish, Los Angeles, CA, Kelly H. Scoffield, T. Dean Simmons, Robert C. Harrison, Exxon Company, U.S.A., Houston, TX, for defendants.

## ORDER GRANTING IN PART EXXON'S MOTION FOR PARTIAL SUMMARY JUDGMENT

WHYTE, District Judge.

Defendant Exxon Corporation's ("Exxon" or "defendant") motion for partial summary judgment came on for hearing on June 3, 1994. The court has read the moving and responding papers and heard the oral argument of counsel. For the reasons discussed below, the court hereby grants in part defendants' motion for partial summary judgment.

### I. Background

Each of the thirteen plaintiffs in the above-entitled action has or had a franchise agreement with Exxon whereby the plaintiffs purchased motor fuel from Exxon for resale to the public. At some point prior to the inception of this litigation, twelve of the plaintiffs received a notice of non-renewal from Exxon. After sending the notices of non-renewal, Exxon offered to sell the premises on which each of these plaintiffs' stations is located. The offers required plaintiffs to make earnest money payments by certain dates. The sale prices, earnest money amounts, and earnest money due dates vary from plaintiff to plaintiff.[1] Exxon made the offers between April, 1992 and November, 1993, and the offers originally expired between July, 1992 and January, 1994.

On October 29, 1993, plaintiffs filed this action seeking damages and injunctive relief for alleged violations of the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801 et seq., and violations of California law. Specifically, claim one of the complaint alleges that Exxon's offers to sell were not "bona fide" offers to sell as required under section 2802(b)(3)(D) of the PMPA.

After the plaintiffs filed their complaint, the parties continued to negotiate extensions of the earnest money due dates and franchise expiration dates. Later, after Exxon apparently refused to grant further extensions, eight of the plaintiffs applied to the court for a temporary restraining order. On January 26, 1994, the court issued a temporary restraining order and on March 3, 1994, the court granted plaintiffs' motion for a preliminary injunction restraining Exxon from terminating or not renewing the franchise relationships pending trial on the conditions that after each of the plaintiffs' franchise agreements expired they would agree to operate under the provisions of Exxon's new standard franchise agreements, and that Exxon would continue to hold the plaintiffs' earnest money payments made prior to or as a result of this court's January 26, 1994 order in an interest bearing account.

After the complaint was filed, but prior to the expiration of plaintiffs Shahkarami, Andary and Gamch's franchise agreements, Exxon sent letters to those three plaintiffs withdrawing the previous notices of non-renewal and extending offers to renew these three plaintiffs' franchise relationships with Exxon for three years. (Exxon's statement of Undisputed Facts at ¶¶ 1 and 2). The letters stated that Exxon had recently reclassified these plaintiffs' stations and therefore decided to retain them. The re-classification decisions were apparently made in late 1993, and Exxon orally informed at least one of the three dealers of that fact prior to plaintiffs' application for a temporary restraining order. (See Declaration of Albert G. Andary in support of Application for Temporary Restraining Order at ¶ 9). The letters also indicated that Exxon would rescind the contract to sell and return the franchisee's earnest money unless the franchisee desired to continue with the purchase, in which case Exxon would honor the purchase contract. (Exhibit D to Declaration of Nancy Perham).

Exxon now moves for partial summary judgment on first cause of action brought under section 2802(b)(3)(D) of the PMPA as

---

1. See Exhibit E to Declaration of Eugene Burrus in support of defendants' opposition to Order to Show Cause regarding Preliminary Injunction for detail of dates and amounts.

to plaintiffs Shahkarami, Andary, and Gamch. Exxon argues that these three dealers lack standing to sue under section 2802(b)(3)(D) of the PMPA because Exxon withdrew the notices of non-renewal.

## II. Legal Standards

■ "The overriding purpose of Title I of the PMPA is to protect the franchisee's reasonable expectation of continuing the franchise relationship." *Ellis v. Mobil Oil,* 969 F.2d 784 (9th Cir.1992) (quoting *Slatky v. Amoco Oil Co.,* 830 F.2d 476, 484 (3d Cir. 1987)). Therefore, the Act is to be liberally construed consistent with the goal of protecting franchisees. *Hilo v. Exxon Corp.,* 997 F.2d 641, 643 (9th Cir.1993).

■ The PMPA prohibits a franchisor from terminating or not renewing a "franchise relationship" except for specifically enumerated reasons and under the notice requirements set forth in the Act. The terms "franchise" and "franchise relationship" have two distinct meanings under the PMPA. A "franchise" includes the particular lease and sales contracts between the franchisor and franchisee. 15 U.S.C. § 2801(1)(b). "In contrast, a franchise relationship is 'an entity separate from, but defined by, the franchise, or contractual arrangement existing between the parties.'" 15 U.S.C. § 2801(2); *Svela v. Union Oil Co. of California,* 807 F.2d 1494, 1500 (9th Cir. 1987). The significance of this distinction is that it is the "franchise relationship" rather than the terms of a specific contract that the PMPA requires the franchisor to renew. *Svela, supra,* 807 F.2d at 1500.

Under the PMPA, a franchisor's good faith decision to sell the premises is a permissible ground for non-renewal of the franchise relationship if certain conditions are met, including proper notice to the franchisee and a bona fide offer to the sell the premises to the franchisee. 15 U.S.C. § 2802(b)(3)(D)(iii); *Ellis, supra,* 969 F.2d at 785; *Lauro v. Mobil Oil Corp.,* 825 F.Supp. 994, 995 (M.D.Fla. 1992); *LCA Corp. v. Shell Oil Co.,* 916 F.2d 434, 437 (8th Cir.1990).

Another proper ground for non-renewal arises when the franchisor offers to renew the franchise relationship but the franchisor and franchisee fail to agree on changes or additions to the franchise terms. 15 U.S.C. § 2802(b)(3)(A). However, the failure to agree is only a proper ground for non-renewal if the changes or additions to the franchise are the result of "determinations by the franchisor in good faith, in the normal course of business and not for the purpose of preventing the renewal of the franchise relationship." *Valentine v. Mobil Oil Corp.,* 789 F.2d 1388, 1391 (9th Cir.1986); 15 U.S.C. § 2802(b)(3)(A).

■ The Ninth Circuit has repeatedly held that section 2802(b)(3)(D), and its requirement that a franchisor make a bona fide offer to sell, applies only when the franchisor unilaterally wishes to terminate the franchise relationship. On the other hand, where the franchisor wants to maintain the franchise relationship but wants material changes in the franchise terms, section 2802(b)(3)(A) applies. *Svela, supra,* 807 F.2d at 1501 (citing *Valentine v. Mobil Oil Corp.,* 789 F.2d 1388, 1390 (9th Cir.1986).

## III. Discussion

The parties do not dispute that plaintiffs Shahkarami, Andary, and Gamch each received a notice of non-renewal and thereafter an offer to sell from Exxon. Shahkarami, Andary and Gamch each attempted to accept Exxon's offer by returning a signed copy of the sales contract and paying the earnest money required.[2] However, despite the initial "acceptance," these three plaintiffs, along with the other plaintiffs, apparently believed that the offers to sell were not bona fide offers as required under section 2802(b)(3)(D) of the PMPA. Therefore, on October 29, 1993, the plaintiffs filed suit alleging violations of section 2802(b)(3)(D) as well as violations of state law.

There is also no dispute that after plaintiffs filed suit, but before the expiration of these three plaintiffs' franchise relationships,

---

**2.** Plaintiff Shahkarami signed the sales contract and presumedly paid the earnest money on October 22, 1993. Plaintiff Andary signed the sales contract and presumedly paid the earnest money on July 20, 1993. Plaintiff Gamch signed the sales contract and presumedly paid the earnest money on May 13, 1993. (See Ex. C to Perham Decl.).

Exxon withdrew the notices of non-renewal and offered to renew the franchise relationship with each of the three plaintiffs.[3] Exxon offered each of the three plaintiffs a new three year lease and sales agreement. (Ex. D to Perham Decl.). Although Exxon discusses the reasons it changed the initial decision to non-renew, Exxon's reasons for changing its decision are not determinative factors in this motion. Exxon also attempts to argue the good faith of the terms of the new franchise agreements that it offered to these three plaintiffs when it withdrew the notices of non-renewal. The terms of the new franchise agreements, and whether those terms are offered in good faith, are not relevant to this motion. The section 2802(b)(3)(D) claim is the only claim in the complaint brought pursuant to the PMPA. Therefore, whether the terms of the new franchise agreement are made under the conditions set forth in section 2802(b)(3)(A) is not an issue.[4]

■ Rather, this motion presents a single question of law: Is a franchisor, who initially sent a notice of non-renewal and offer to sell to a franchisee who "accepted" the offer subject to the contention that the offer was not "bona fide," required to sell at a bona fide price even after the franchisor has withdrawn its notice of nonrenewal and offered to renew the franchise relationship? For the following reasons, the court holds that the answer to this question is no at least as long as the offer to renew is made prior to the expiration of the franchise relationship. Exxon is, therefore, entitled to partial summary judgment as against these three plaintiffs on claim one of the complaint.

Plaintiffs argue that Exxon cannot avoid the bona fide offer requirement of the PMPA by offering to renew plaintiffs Shahkarami, Andary and Gamch's franchise relationships. Plaintiffs assert that Exxon is not only bound to sell them their stations, but that Exxon is also bound to sell them their stations pursuant to a bona fide offer which may or may not contain the terms currently offered by Exxon. Thus, in essence, plaintiffs argue that the purchase contracts are binding but not necessarily under the terms as currently set forth.

The court is not persuaded by plaintiffs' argument. First, Exxon is not currently bound to sell the station premises to plaintiffs Shahkarami, Andary, and Gamch. Second, to the extent that Exxon is nonetheless willing to sell the station premises, its offers to sell are not governed by the PMPA.

■ There is little doubt that had the plaintiffs unequivocally accepted Exxon's original offers to sell the station premises, binding contracts would have been formed. However, that is not the situation here. While each of the three plaintiffs returned the signed sales contract and earnest money payment as required by Exxon's offer, they thereafter filed a lawsuit alleging that the terms offered to them were not bona fide and therefore apparently not acceptable. Thus, in essence, these three plaintiffs accepted Exxon's offer but only under the condition that the offer be something other than what it was. It is basic contract law that one cannot accept an offer other than under the terms offered. A conditional "acceptance" is a rejection and counter-offer which the offeror can then accept or reject. *See* B.E. Witkin, *Summary of California Law,* Contracts §§ 189–192 (9th Ed.1987). Because these plaintiffs did not accept the terms offered by Exxon, there is no binding contract, and Exxon is not bound to sell these three plaintiffs their stations.[5] Plaintiffs also argue

---

3. Exxon offered to renew these three plaintiff's franchise relationships on the following dates: Shahkarami: December 16, 1993; Andary: February 4, 1994; Gamch: February 4, 1994. (See Ex. D to Perham Decl.).

4. Accordingly Exxon's second ground on which it seeks summary judgment is not properly before the court. Plaintiffs have not alleged a claim under section 2802(b)(3)(A) and therefore the court cannot grant summary judgment on an issue related only to such a claim.

5. If the PMPA provided standards for determining a specific sales price and terms in an offer made under the PMPA, a franchisor might be bound upon an election by the franchisee to purchase despite the franchisor's attempt to include terms or a price not allowed by the PMPA. However, the PMPA only requires an offer to be "bona fide" and that requirement does not provide a standard by which a specific price and terms may be fixed. A variety of prices and terms could be contained in a "bona fide" offer.

that Exxon has confirmed the existence of a binding contract to sell: "If, however, you desire to continue with the purchase of the station, we will honor that purchase contract." (Ex. D. to Perham Decl.). However, Exxon's statement only indicates that Exxon is willing to sell the stations under the terms offered by Exxon and that plaintiffs are free to accept those terms.

Plaintiffs further argue that because Exxon's offer to sell had to be bona fide at the time it was made, Exxon's subsequent decision to renew cannot delete that requirement. This argument is misplaced. When Exxon notified its franchisees, plaintiffs Shahkarami, Andary and Gamch, that it would not renew their franchises because Exxon had decided to sell the station premises, the PMPA required that Exxon offer to sell the station premises to its franchisees. The PMPA also required that the offer to sell be a bona fide offer. However, the PMPA only required Exxon to make a bona fide offer to sell because Exxon had decided not to renew the franchise relationship. Section 2802(b)(3)(D) only applies where the franchisor unilaterally wishes to terminate the franchise relationship. *Svela v. Union Oil Co.*, 807 F.2d 1494, 1501 (9th Cir.1987) (citing *Valentine v. Mobile Oil Corp.*, 789 F.2d 1388, 1391 (9th Cir.1986)).

▪ After Exxon decided to renew its franchise relationship with plaintiffs Shahkarami, Andary and Gamch, the PMPA no longer required Exxon to give these dealers a bona fide offer to purchase:

"The overriding purpose of Title I of the PMPA is to protect the franchisee's reasonable expectation of continuing the franchise relationship." *Slatky v. Amoco Oil Co.*, 830 F.2d 476, 484 (3d Cir.1987). When a franchisor decides for legitimate business reasons not to renew a franchise relationship, the franchisor must give the franchisee a bona fide offer to purchase the station. The offer to buy at fair market value serves as a second, and distinct layer of protection....

To be "bona fide", an offer need only "approach[] fair market value." *Ellis v. Mobil Oil*, 969 F.2d 784, 787 (9th Cir.1992) (quoting *Slatky*

*Ellis Mobil Oil Co.*, 969 F.2d 784, 788 (9th Cir.1992). By offering to renew, Exxon has preserved Shahkarami, Andary and Gamch's reasonable expectation of a continuing franchise relationship. That is all the PMPA required.

▪ Plaintiffs point to *Hilo v. Exxon*, 997 F.2d 641 (9th Cir.1993) and *Pro Sales, Inc. v. Texaco, U.S.A.*, 792 F.2d 1394, 1399 (9th Cir.1986), for the proposition that a "completed termination or non-renewal is not a prerequisite for PMPA relief" and that a threat of non-renewal or termination is sufficient. (Opp. at ——). These cases do stand for that proposition, however, neither is relevant here because there is no longer even a threat of nonrenewal. Exxon offered to renew Shahkarami, Andary and Gamch's franchise relationships prior to the expiration of each of their previous franchise agreements. Plaintiffs have offered no authority for the proposition that once Exxon notified the plaintiffs of non-renewal it had no right to re-evaluate its decision prior to the effective date of non-renewal. Moreover, plaintiffs have not demonstrated how they have been damaged by Exxon's decision other than having to pay earnest money which will be returned. Plaintiffs repeatedly assert that they want to buy not renew. However, the PMPA does not give franchisees the right to make this choice. Only when a franchisor decides to terminate or non-renew a franchise relationship for certain specified reasons are its franchisees entitled to a bona fide offer to sell.

If Exxon had failed to offer to renew its franchise relationships with these three plaintiffs until after each of the franchise agreements had expired, the situation might be different. Allowing a franchisor to offer to renew after the franchise relationship has ended would contravene the underlying purpose of the PMPA to protect the franchisee's reasonable expectation of continuing the franchise relationship. *Ellis v. Mobil Oil, supra*, 969 F.2d 784.

However, in this case, Exxon offered to renew its franchise relationship with plain-

*v. Amoco Oil Co.*, 830 F.2d 476, 485 (3d Cir. 1987)).

tiffs Shahkarami, Andary and Gamch prior to the date upon which its prior notice of nonrenewal would have become effective, i.e. prior to the expiration of these three plaintiffs' previous franchise agreements. Because Exxon has offered to renew the franchise relationships, plaintiffs Shahkarami, Andary and Gamch are not entitled to a bona fide offer to sell. Accordingly, Exxon is entitled to summary judgment on claim one as to those plaintiffs.

## IV. Order

Based on the foregoing and good cause appearing therefore, it is hereby ordered that Exxon's motion for partial summary judgment is hereby granted on claim one as to plaintiffs Shahkarami, Andary, and Gamch.