BURGER KING CORPORATION,
Plaintiff,

v.

Idress S. AGAD and Mohammad Iqbal
Balagamwala, Defendants.

Civil Action No. 1:93–cv–898–MHS.

United States District Court,
N.D. Georgia,
Atlanta Division.

Feb. 7, 1996.

John Garrett Parker, Ronald Thomas Coleman, Jr., Paul Hastings Janofsky & Walker, Atlanta, GA, for Burger King Corporation.

Lloyd Bruce Hedrick, Swift Currie McGhee & Hiers, Atlanta, GA, George Michael Smith, Dean Smith & Therrell, Atlanta, GA, Rosa I. Rodriguez, Zarco & Associates, Miami, FL, for Idress S. Agad, Mohammad Iqbal Balagamwala.

### ORDER

SHOOB, Senior District Judge.

This action is before the Court on numerous motions. For the reasons stated below, the Court grants plaintiff's motion for summary judgment on defendants' counterclaims, denies plaintiff's motion for sanctions against defendants' former counsel, and denies defendants' motion to disqualify plaintiff's counsel.

*Plaintiff's Motion for Summary Judgment*

1. Background

Plaintiff Burger King Corporation (BKC) brought this action to enforce the terminations of four Franchise Agreements between BKC and defendants, Agad and Balagamwala. BKC alleges that it terminated defendants' Franchise Agreements for restaurants # 171, # 561, # 783, and # 846 based on defendants' repeated quality assurance defaults and their failure to cure these defaults after proper notice and reinspection.

Defendants asserted nine counterclaims against BKC, six of which this Court dismissed by Order dated May 19, 1994. In the remaining counterclaims, defendants allege that 1) BKC breached the express terms and implied covenants of the Franchise Agreements with defendants for restaurants # 2034 and # 171 by denying defendants suc-

cessor agreements (Counterclaim ¶ 21); 2) BKC breached the implied covenant of good faith inherent in the Franchise Agreements by authorizing the opening of a new Burger King franchised restaurant in Lenox Square Mall, which encroached upon two of defendants' Burger King restaurants; 3) BKC breached both the express terms and implied covenants of the Franchise Agreements by allegedly failing to provide defendants with adequate franchisee support services, market research and product testing services, and advertising services; and 4) BKC has been unjustly enriched by improperly retaining funds paid to it by defendants pursuant to their obligations under the Franchise Agreements. BKC now moves for summary judgment on these remaining counterclaims.

## 2. Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." In *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court held that the moving party could meet this burden by demonstrating that there is "an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. at 2554. At that point, the burden shifts to the non-moving party to go beyond the pleadings and present specific evidence giving rise to a triable issue. *Id.* at 324, 106 S.Ct. at 2553.

In reviewing motions for summary judgment, the Court must construe the evidence and all inferences drawn from the evidence in the light most favorable to the non-moving party. *WSB–TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir.1988). Nevertheless, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986).

## 3. Successor Agreements Claim

BKC argues that defendants were not entitled to successor agreements for restaurants # 171 and # 2034 because defendants failed to comply with the terms of the Franchise Agreements. Defendants respond that BKC violated the express terms of the Franchise Agreements by failing to fulfill its contractual obligation to provide defendants with notice four years before the expiration of the Franchise Agreement that they would not be granted successor agreements. Defendants also contest BKC's claim that they defaulted under the Franchise Agreements.

The Franchise Agreement for restaurant # 171 states,

> The term of this Agreement shall commence on May 18, 1979, and shall expire on December 30, 1994, unless sooner terminated in accordance with the terms of this Agreement. FRANCHISEE accepts this license with the full and complete understanding that the license expires on December 30, 1994, with no promise or assurance of renewal or the granting of a new license at expiration.

Furthermore, the Franchise Agreement for restaurant # 171 states,

> "While FRANCHISEE has no contractual right, or BKC any obligation, to renew this franchise or enter into a successor franchise, BKC's business practice is structured to encourage succession and anticipates that a very high percentage of franchisees will seek and qualify for a successor franchise.... The franchisee not able to satisfy BKC successor standards will so be advised approximately four (4) years prior to the expiration of the term (or upon the occurrence of a disqualifying act during the last four (4) years)...."

The Court concludes that there is no genuine issue of material fact as to whether BKC breached the express terms of the Franchise Agreement with defendants for restaurant # 171 by denying defendants a successor agreement for that restaurant. The Franchise Agreement expressly and repeatedly states that the BKC has no obligation to renew the Franchise Agreement. Furthermore, BKC complied with the notifi-

cation clause of the Franchise Agreement because the undisputed facts show that BKC notified defendants by letter dated April 26, 1993, that it would deny defendants a successor agreement for Burger King restaurant # 171 because of defendants' failure to pay a past due estimated amount of $274,679.81 for food and products, failure to pay for certain receivables, failure to serve all food items specified by BKC, and failure to maintain and operate restaurant # 171 in accordance with BKC standards as to service, cleanliness, health, and sanitation. Because defendants provided this notice upon alleged disqualifying acts occurring within the last four years of the Franchise Agreement, BKC did not violate the express terms of the Franchise Agreement.

■ Furthermore, defendants have not shown that BKC violated the implied covenant of good faith and fair dealing because they have not produced evidence creating a genuine issue of material fact as to whether they complied with the terms of the Franchise Agreement. First, the undisputed facts show that defendants did not carry a required food item called the BK Broiler Sandwich in violation of the Franchise Agreement. Second, in response to the substantial evidence produced by BKC that defendants owed BKC $274,679.81 for food and products, defendants state in a conclusory fashion that they paid for all products delivered to all of their BK restaurants. In response to a motion for summary judgment, the nonmovant "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). "Mere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment." *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir.1989). Defendants have failed to create such a dispute and therefore BKC is entitled to summary judgment.

With regard to restaurant # 2034, BK contends that defendants defaulted under the Franchise Agreement because they permanently ceased operation of the restaurant after a fire in January 1992, failed to promptly repair the premises, failed to obtain a right to possession of the restaurant's premises for the duration of the Franchise Agreement, failed to serve all food items specified by BKC, and failed to notify BKC in writing of their desire to be considered for a successor.

■ The Franchise Agreement for restaurant # 2034 states that BK will offer defendants a successor agreement provided defendants "shall have substantially complied with all of the terms and conditions of this agreement and any other agreement between [defendants and BKC], and shall have substantially complied with the operating standards and criteria established for Burger King Restaurants ..." The Franchise Agreement provides that defendants must keep the restaurant open for business during the Franchise Agreement's term, promptly make all repairs to the restaurant's premises which were reasonably necessary to its continued operation, maintain possession of the restaurant premises, and serve all food items specified by BKC.

The undisputed facts show that, after fire damaged restaurant # 2034, defendants ceased to do business at the restaurant and failed to promptly repair the restaurant's premises. Furthermore, defendants' lease for the restaurant's premises expired before the expiration of the Franchise Agreement. Finally, as stated above, defendants did not serve the BK Broiler Sandwich, which was a required menu item. Therefore, since defendants did not substantially comply with all of the terms and conditions of the Franchise Agreement, BKC had no obligation to grant defendants a successor agreement and BKC is entitled to summary judgment.

### 4. Encroachment Claim

BKC first argues that there is no credible evidence that the Lenox Square Mall BK restaurant had any impact upon the business of defendants' restaurants. BKC further argues that the express terms of the Franchise Agreements make clear that defendants have no protected market or territorial rights in connection with their restaurants. Defendants respond that the Lenox Square Mall

BK restaurant, located 3.2 miles northeast of defendants' restaurant # 171 and 2.4 miles southwest of defendants' restaurant # 561, caused a substantial decline in gross sales of restaurants # 171 and # 561. Furthermore, defendants contend that there is no "explicit contractual provision which grants BKC the unilateral right to open other proximate franchises regardless of their effect on Defendants' existing restaurants."

 Defendants' Franchise Agreements for restaurants # 171 and # 561 expressly state that the franchise "license is for the described location only, and does not in any way grant or imply any area, market or territorial rights proprietary to [defendants]" with respect to their restaurants. Defendants cannot use the implied covenant of good faith and fair dealing to override the express terms of the contract. *See Fickling v. Burger King Corp.*, 843 F.2d 1386 (4th Cir. Apr. 4, 1988); *Burger King Corp. v. Weaver*, Case No. 90–2191–CIV–MARCUS (S.D.Fla., Sept. 18, 1995); *Dickey v. Holiday Inns of Amer., Inc.*, 226 So.2d 406, 407 (Fla.Dist.Ct. App.1969). Therefore, the Court grants plaintiff's motion for summary judgment on defendants' encroachment claim.

### 5. Franchise Services Claim

BKC argues that defendants' counterclaim for breach of express contract provisions must fail because BKC complied with its contractual obligations by constantly providing franchise support and advertising services to its franchisees, including defendants. BKC further argues that defendants' implied covenant claim also must fail because there is no evidence that it acted in bad faith or with an improper motive in the way it provided support and advertising services to its franchisees or to defendants. BKC argues that the implied covenant of good faith and fair dealing is not a license for defendants to second guess BKC's legitimate business decisions.

Defendants argue that BKC breached the express contract provisions and the implied covenants of good faith and fair dealing inherent in the Franchise Agreements 1) by failing to provide adequate franchisee support services, 2) by drastically reducing its market research and product testing, and 3) by misappropriating and otherwise mismanaging funds paid by defendants for advertising purposes.

The Franchise Agreements between BKC and defendants state that BKC will advise and consult with defendants in connection with the operations of the restaurants and will provide the following franchise services to defendants: 1) a copy of BKC's Manual of Operating Data, (2) merchandising, advertising, and marketing research development "from time to time," 3) standardized accounting and cost control procedures, and 4) communication about new developments, techniques in management, operations, and food preparation.

 Construing the evidence and all inferences drawn from the evidence in the light most favorable to defendants, the Court concludes that defendants have not provided sufficient evidence to create a genuine issue of material fact as to whether BKC breached the express terms of the contract or the implied covenants of good faith and fair dealing. The undisputed facts show that BKC provided defendants with franchise support services, product testing and research services, and advertising, thereby meeting the express terms of the Franchise Agreement. *See Burger King Corp. v. Austin*, [1990–1992 Transfer Binder] Bus. Franchise Guide (CCH) ¶ 9731, at 21,774 (S.D.Fla.1990) (BKC's Franchise Agreements do not allow defendants to interfere in BKC's discretionary provision of management services by claiming contract breach).

 Furthermore, defendants have not produced sufficient evidence to create a dispute as to whether BKC breached an implied covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing requires that "a party vested with contractual discretion must exercise that discretion reasonably and with proper motive, and may not do so arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties." *Burger King v. Austin*, 805 F.Supp. 1007 (S.D.Fla.1992). BKC has shown that it had valid business reasons for its actions with regard to support

services, product testing and research, and advertising, and defendants have not produced evidence creating a genuine issue of fact as to whether BKC's acted unreasonably or without proper motive.

Defendants argue that BKC improperly used advertising funds to repay commercial debts and pay taxes, citing defendant Agad's deposition testimony to support these claims. Defendant Agad's testimony as to that matter, however, is inadmissible hearsay and is not based on personal knowledge. Defendants further allege in their complaint that BKC produced "inept" advertising and targeted its advertising efforts toward markets dominated by company-owned restaurants, but defendants have not provided evidence to support these allegations.

■■■■ Finally, defendants object to BKC using advertising funds to make a $5 million donation to the American Red Cross. BKC argues that this contribution was part of a legitimate public relations and promotion effort and that BKC received substantial positive publicity. The Franchise Agreements explicitly provide that "[a]ll advertising expenditures shall be at the discretion of BKC." The Court agrees with BKC that defendants cannot use the implied covenant of good faith and fair dealing to second guess BKC's legitimate business decisions. *See Vasco v. Mobil Oil Corp.*, 698 F.Supp. 102, 104 (D.Md.1988) (" 'Good faith' has been uniformly interpreted as meaning subjective good faith, that is, an honest evaluation of the franchisor's own business needs, and in applying that standard courts are not entitled to second-guess franchisor's economic decisions"). Therefore, BKC is entitled to summary judgment.

### 6. Unjust Enrichment Claim

■■■■ On April 26, 1993, BKC issued a notice of monetary default against defendants, stating that defendants owed BKC $20,692.68 in taxes and $877.67 in rent. Defendants paid these amounts under protest, contending that they had previously paid these amounts. Defendants contend they have the cancelled checks showing that they previously made these payments, yet they have failed to submit copies of these checks with their response, instead simply relying

upon Mr. Agad's general assertion that "[m]y partner and I paid all property taxes due on all of our BK Restaurant locations." The Court concludes that defendants have not produced evidence creating a genuine issue of material fact as to whether the amounts at issue were previously paid. Therefore, the Court grants BKC's motion for summary judgment on this claim.

### Remaining Motions

Plaintiff moves for sanctions and other relief against defendants' former counsel Robert Zarco on the grounds, *inter alia,* that Zarco "lied" and misrepresented facts to the Court regarding his conduct. Zarco has filed a motion to disqualify plaintiff's counsel for engaging in prohibited communications with Zarco's former employees. Subsequent to the filing of these motions, Zarco has withdrawn from representation of defendants in this case. In light of this fact, the Court declines to reach the merits of plaintiff's motion for sanctions and denies this motion. Furthermore, the Court denies defendants' motion to disqualify plaintiff's counsel because the Court finds that plaintiff's counsel did not engage in prohibited communications.

### Summary

The Court GRANTS plaintiff's motion for summary judgment as to defendants' counterclaims [# 146–1]; DENIES plaintiff's motion for sanctions [# 154–1]; GRANTS defendants' motion for reconsideration [# 159–1]; DENIES plaintiff's motion for leave to take discovery in aid of its motion for sanctions [# 155–1]; DENIES AS MOOT Robert Zarco's motion for a protective order [# 175–1]; DENIES plaintiff's motion to file reply after the completion of discovery [# 161–1]; DENIES defendants' motion to disqualify plaintiff's counsel [# 160–1]; DENIES AS MOOT plaintiff's motion for enlargement of time to file response to defendants' motion to disqualify [# 164–1]; and DIRECTS the parties to submit a consolidated pretrial order within thirty days of the date of entry of this order.

IT IS SO ORDERED.