124 F.3d 212
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Sirop O. MAGERIAN, Plaintiff-Appellant,
v.
EXXON CORPORATION, Defendant-Appellee.
 Nos. 96-15680, 96-15683.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 9, 1997
Aug. 13, 1997.
 
 Appeal from the United States District Court for the Northern District of California, D.C. No. CV-95-20293-RMW; Robert M. Whyte, District Judge, Presiding.
 Before: HUG, Chief Judge, GOODWIN and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Sirop O. Magerian, the owner-operator of an Exxon franchise service station, appeals the district court's grant of summary judgment for Exxon Corp. ("Exxon") in his suit under the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801 et seq. We affirm.
 
 
 3
 First, Magerian's argument that Exxon's decision not to renew his franchise was not made in good faith and in the normal course of business ignores our decision in Svela v. Union Oil Co., 807 F.2d 1494, 1501 (9th Cir.1987). The requirements that a franchisor's determination to alter provisions of a franchise be made in good faith, in the normal course of business, and not for the purpose of preventing the renewal of the franchise relationship
 
 
 4
 preclude judicial second-guessing of the economic decisions of franchisors. The legislative history of the PMPA indicates that courts should look to the franchisor's intent rather than to the effect of his actions, making this a subjective test. Therefore, the fact that [a franchisor's] proposed changes might make it difficult for [a franchisee] to remain in business and earn a profit is irrelevant to a finding of good faith. The legislation was intended to provide franchisors with flexibility to respond to changing market conditions and consumer preferences. "So long as the franchisor does not have a discriminatory motive or use the altered terms as a pretext to avoid renewal, the franchisor has met the burden required by the PMPA for determining good faith."
 
 
 5
 Id. at 1501 (citations omitted) (quoting Baldauf v. Amoco Oil Co., 553 F.Supp. 408, 412 (W.D.Mich.1981), aff'd, 700 F.2d 326 (6th Cir.1983)). While the franchisor bears the burden of proving that the decision to terminate or not renew is permitted under the PMPA, the franchisee must present actual evidence that the franchisor's decision is a sham, pretextual, or discriminatory and not made in the normal course of business. See Marks v. Shell Oil Co., 643 F.Supp. 1050, 1053, 1055 (E.D.Mich.1986), vacated, 830 F.2d 68 (6th Cir.1987).
 
 
 6
 The district court's finding that Exxon's decision not to renew Magerian's franchise was made in good faith and in the normal course of business is not clearly erroneous. Exxon presented evidence that it considered objective criteria in deciding not to renew a number of service stations, including Magerian's, in Northern California. Such criteria included: whether the store had been modernized in the last two years; the volume of gasoline sales at the store; the type of underground tanks at the store; and Exxon's internal rate of return. Courts have found such criteria to be appropriate grounds for selling a station under the PMPA. See, e.g., Kim v. Mobil Oil Corp., No. CV-85-4589, Business Franchise Guide p 8658, at 16,730-31 (C.D.Cal.1986) (franchisor's decision to sell station properly based on factors such as level of gasoline sales; historical sales volume at station; location of station; and manner in which station fit within franchisor's long-term plans).
 
 
 7
 In another case brought by former Exxon franchisees, the same district court granted Exxon's motion for partial summary judgment on plaintiff's PMPA claims that their stations were not surplussed in good faith or in the normal course of business. It found that the above criteria constituted sufficient evidence of Exxon's good faith given that the plaintiffs offered no evidence to the contrary. See Ajir v. Exxon, No. C-93-20830 (N.D.Cal. May 2, 1995).
 
 
 8
 Magerian's allegations to the contrary are unsupported by any evidence and hence do not cast doubt on Exxon's motivation for its decision. Exxon's rejection of Magerian's counteroffer of $300,000 plus Exxon's payment of all remediation costs was not evidence of Exxon's failure to negotiate. Furthermore, Exxon's offer to pay for remediation of the baseline contamination precludes Magerian's claim that Exxon actively concealed knowledge of the station's hazardous substance contamination.
 
 
 9
 In addition, Exxon complied with the 90-day notice requirement under the PMPA. See 15 U.S.C. § 2804(a). It sent Magerian a letter on January 13, 1995 announcing its decision not to renew the franchise and offering to sell him the property, which letter informed him of nonrenewal effective May 1, 1995.
 
 
 10
 Nor did Magerian offer any evidence to support his bare allegation of retaliation/discrimination. He submitted nothing but his own assertion to support his claim that a Florida dealer's franchise was not terminated due to misbranding. Even if he had offered some evidence, he cited "no authority converting an unrelated act of forgiveness into a contractual right." Geib v. Amoco Oil Co., 29 F.3d 1050, 1055 (6th Cir.1994). Moreover, Magerian's participation in a previous suit against Exxon, Exxon Corp. v. Superior Court (Koutney), 60 Cal.Rptr.2d 195 (Cal.Ct.App.1997), does not give rise to a per se presumption of retaliation by Exxon. In fact, Exxon points out that the Koutney lawsuit was filed in Fall 1993, after Exxon decided to sell Magerian's station pursuant to objectively applied criteria in May 1992, thereby negating any inference of retaliation.
 
 
 11
 Magerian also contends that Exxon's offer of sale was not bona fide. "It is settled law that a bona fide offer under the PMPA is measured by an objective market standard. To be objectively reasonable, an offer must 'approach[ ] fair market value.' " Ellis v. Mobil Oil, 969 F.2d 784, 787 (9th Cir.1992) (quoting Slatky v. Amoco Oil Co., 830 F.2d 476, 485 (3d Cir.1987)). The Slatky court held:
 
 
 12
 We ... are guided by Congress's decision not actually to use the term "fair market value" but instead the term bona fide, which suggests some degree of deference. That choice indicates, we believe, a recognition that "the word 'value' almost always involves a conjecture, a guess, a prediction, a prophecy." "[T]here is no universally infallible index of fair market value." There may be a range of prices with reasonable claims to being fair market value. Were we to mandate that courts determine whether the distributor's offer actually was at fair market value, distributors could rarely rest comfortably that their offer would eventually be determined by the court to be fair market value.
 
 
 13
 830 F.2d at 485 (citations omitted) (quoting Amerada Hess Corp. v. Commissioner, 517 F.2d 75, 83 (3d Cir.1975) (quoting other cases); see also LCA Corp. v. Shell Oil Co., 916 F.2d 434, 439 (8th Cir.1990) (noting that "the objective reasonableness test does not measure whether the franchisor's offer was actually at fair market value but rather whether the offer approached fair market value").
 
 
 14
 The district court's finding that Exxon's offer was bona fide was also not clearly erroneous. Exxon submitted an independent appraisal by Arthur Andersen & Company in May 1995, upon which it based its offer to Magerian. Magerian only offered unsupported opinions from a real estate broker and appraiser that the property was worth $300,000 and that Exxon's offer was not bona fide, respectively. The district court did not abuse its discretion in concluding that these opinions were not sufficient to defeat Exxon's motion for summary judgment on the bona fide offer issue. See, e.g., McGlinchy v. Shell Chem. Co., 845 F.2d 802, 806 (9th Cir.1988) ("[I]n the context of a motion for summary judgment, an expert must demonstrate his competence or back up his opinion with specific facts."); United States v. Various Slot Machines on Guam, 658 F.2d 697, 700 (9th Cir.1981) ("[W]e have difficulty with the notion that to state an opinion is to set forth specific facts.... [W]e also think that, in the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). Moreover, despite the district court's stated concern at the preliminary injunction stage that Magerian submitted no independent appraisal to support his claim, he did not file an appraisal until after the summary judgment hearing. The district court did not abuse its discretion in disallowing this late filing. See Western Chance # 2, Inc. v. KFC Corp., 957 F.2d 1538, 1544 (9th Cir.1992) (citing Fed.R.Civ.P. 52(e)) ("The district court has discretion to refuse the filing of untimely affidavits.").
 
 
 15
 As for Magerian's claim that Exxon's appraisal contained a computation error in the square footage of the property leading to an overvaluation of $22,000-$36,000, this fact was asserted by Magerian's counsel in a declaration filed the day before the summary judgment hearing. Exxon, therefore, did not have an opportunity to formally respond to this alleged error. Even assuming that Exxon's appraisal contains such an error, it would not negate the bona fide nature of Exxon's offer.
 
 
 16
 Finally, Magerian's claim that the district court did not consider the possibility of contamination in evaluating Exxon's offer has no merit. The district court specifically noted that Exxon agreed to pay for remediation of baseline contamination of the property.
 
 
 17
 Because we hold that Exxon's decision not to renew Magerian's franchise was made in good faith and in the normal course of business and that its offer to sell the premises was bona fide, we do not reach the misbranding issue.
 
 
 18
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3